WARD vs. BORKENHAGEN and another.

*November 12 — November 30, 1880.*

SALE OF CHATTEL. *(1) False representations to vendee's agent. (2) Extent of vendor's liability for defects.*

1. Fraudulent representations of a vendor to the authorized agent of the vendee, inducing him to purchase, have the same legal effect as if made to the vendee, buying in person.
2. On a sale of a horse, induced by the vendor's false representations as to its soundness, he is liable for defects not apparent to the observation and judgment of an ordinarily prudent person.

APPEAL from the County Court of *Milwaukee* County.

Defendants appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

For the appellants there was a brief by *Austin & Runkel*, and oral argument by *Mr. Austin*.

For the respondent there was a brief by *John M. Connolly*, his attorney, with *Murphey & Goodwin* of counsel, and oral argument by *Mr. Connolly.*

COLE, C. J.    This is an action to recover damages for fraud and deceit in the exchange of horses.   The trade was made by the defendants with Francis Ward, the son of the plaintiff. The gravamen of the complaint is, that the defendants, for the purpose of inducing the son to make the exchange, and with intent to deceive, falsely and fraudulently represented that their horse was sound and without blemish; and that by means of such false and fraudulent representations the son was induced to make the exchange.

One objection taken to the plaintiff's right of recovery is, that he did not know of the representations made to his son, and, as a consequence, could not and did not rely upon them; that whatever representations were made by the defendants about their horse, were so made to the son, who was not the agent of the plaintiff in the transaction.   To this it is well answered that it is alleged in both the amended complaint and answer that Francis was the agent of the plaintiff and had lawful authority to make the exchange.   This should put at rest all question as to the authority of Francis to act for the plaintiff in the matter.   If the defendants, by fraud and deceit, induced the agent to make the exchange, we suppose the plaintiff may maintain an action for any loss he has sustained thereby. In this case the trade must be treated as the trade of the plaintiff, and he is entitled to take advantage of the fraud in the same manner and with like effect as though it had been practiced upon him personally.    These propositions would seem to be elementary.

We do not deem it necessary to notice in detail the exceptions relied on for a reversal of the judgment.   We say generally, in regard to them, that the real issues seem to have been fairly submitted to the jury under a charge which states the

law applicable to the case with sufficient accuracy. There was testimony given which tended to prove that the horse, which the defendants represented as being "all right and sound," had in fact a ring-bone on each forefoot that greatly impaired its value, and that defendants knew of that defect when they made the trade; further, that the son of the plaintiff was not a judge of horses, and did not see the ring-bones on the horse's feet until they were pointed out to him by a farrier soon after the trade. The learned county court charged the jury in substance upon this point, that, in actions of this kind, it was essential for the plaintiff to establish by evidence the fact that the defendants made false representations as to the soundness of their horse, which were relied upon, and induced the son to make the exchange, and that damages had resulted to the plaintiff in consequence of these false representations. Also the court told the jury that if the defect complained of was of such a nature and size, so obvious and visible to the senses, that it could have been discerned by the exercise of ordinary care and diligence by looking at the horse, then the defendants would not be liable for the fraud unless they used some artifice to prevent the son from seeing the defect.

It is evident that the jury must have found, under the charge, that the defendants made false representations as to the soundness of the horse, which were relied upon by the son in making the trade, and that the defect was not apparent to the observation and judgment of an ordinarily prudent person. This being the case, the defendants were responsible for the loss to the injured party. *Mamlock v. Fairbanks*, 46 Wis., 415. It is said that there was evidence which tended to show that the son did not make the exchange on the faith of the defendants' representations as to his soundness, but took the horse on trial, with the privilege of returning the animal if it did not prove to be as represented. No such defense was set up in the answer, nor was there any instruction asked or given to meet such a state of facts. It is true, the son of the plaintiff

testified that there was an understanding or agreement when the trade was made, that, if the horse was not all right, he might return it within a week. But there was also evidence that the plaintiff, as soon as he discovered the defects in the horse, did, in fact, attempt to rescind the trade by offering to return the animal, but the defendants would not receive it, saying that they had sold the plaintiff's horse the next day after the trade. But it is not necessary to dwell upon the facts of the case. We see nothing in the verdict of which the defendants can justly complain. There is surely abundant testimony to warrant the jury in finding that the defendants made fraudulent representations as to the condition of the horse, with intent to deceive, and that such representations were relied on by the agent of the plaintiff in making the exchange which he did make. It is also apparent that the plaintiff must have been injured by the fraud.

It follows from these views that the judgment of the county court must be affirmed.

*By the Court.*—Judgment affirmed.