BARNEY C. TIERNEY *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY and another.

April 6, 1885.

**Appeal—Evidence Received without Objection.**—Where, in an action against two defendants jointly, evidence was introduced tending to establish a joint liability, it is too late to raise the objection for the first time in this court that evidence was also suffered to go to the jury tending to prove negligence on the part of one defendant only.

**Master and Servant—Duty of Railway Company as to Machinery and Instrumentalities.**—It is incumbent upon a railway corporation, in the discharge of its duty as master, not only to provide machinery and instrumentalities for its employes which are suitable and safe, but also to use reasonable diligence to keep them so. Necessarily incident to these obligations is the duty of frequent inspection, and the corporation, acting by its servants in the discharge of such duty, is liable for their negligence.

**Same—Negligence of Inspector of Cars—Injury to Employe—Liability of Company.**—By a regulation governing the employes in the transfer-yard of a railway company, car inspectors were required to inspect incoming cars immediately upon their arrival, and if out of repair to mark them "in bad order," indicating that they were to be sent to the "repair track." *Held,* that negligence on the part of the inspectors in failing to properly discharge this duty, by reason of which plaintiff was injured while attempting to couple a damaged car without notice of its condition, and without fault on his part, might be imputed to the company.

**Same—Risks Assumed by Servants.**—It will not be presumed under such circumstances that the plaintiff assumed the risk of such negligent inspection, unless it appear that he undertook to handle cars in the course of his employment without reference to inspection.

**Evidence—Health of Injured Person.**—A witness who is not an expert may testify to facts within his knowledge and observation in reference to the health and physical condition of an injured person.

**New Trial—Misconduct of Jurors.**—The decision of a trial court upon a motion for a new trial for alleged misconduct of jurors, made upon conflicting affidavits, will not be reversed unless clearly erroneous.

**Same—Damages held not Excessive.**—The damages assessed by the jury in this case *held* not so excessive as to warrant the interference of this court for such cause.

Appeal by the defendants, the Minneapolis & St. Louis Railway Company and the Burlington, Cedar Rapids & Northern Railway Company, from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial, after a verdict of $10,000 for plaintiff. A former appeal is reported 31 Minn. 234.

*J. D. Springer*, for appellants.

*Lovely & Morgan*, for respondent.

VANDERBURGH, J. It is admitted that the defendants jointly owned, maintained, and occupied a yard in common at Albert Lea, where trains were made up to be sent over their respective lines. The respondent had charge of the making up of night trains in the yard, and was injured in the course of his employment, while coupling cars, at about 3 o'clock in the morning of November 24, 1882. A freight train had previously arrived from Minneapolis over the Minneapolis & St. Louis road, including, with others, a box car loaded with flour at that place and bound east. On its arrival it became plaintiff's duty, according to the usual course of business, to obtain a list of the cars and their destination, so that he might proceed to make the necessary transfers in making up the outgoing trains. It was the duty of the car inspectors, two of whom were employed for night service, to inspect all cars in trains on their arrival. The plaintiff had been in the employ of defendants a little more than two weeks, and must have been familiar with the manner in which the business was carried on in the yard. On the night in question, about half an hour after the arrival of the train mentioned, the plaintiff, who had been switching and distributing cars, brought an unloaded flat car from the wood track to the main track, upon which the box car we have referred to still stood, and undertook to couple them. His evidence tends to show that as he went to make the coupling, and while the cars were coming together in the usual way, the draw-bar of the flat car struck and overrode the draw-bar of the box car, which appeared to be loose and insecurely supported, and dropped down when struck by the approaching car, thus permitting the two cars to come together and in-

tercept the plaintiff, and resulting in his being run over upon the track, and in causing the loss of a leg, which was necessarily amputated above the knee.

1. While it may be conceded, for the purposes of this case, that from the circumstances and nature of plaintiff's employment, in which cars from many roads were brought together with coupling attachments of different heights and patterns, he would assume the ordinary risks of the service from such causes, we think, upon the evidence, the question was fairly for the jury whether the accident occurred from such causes, or from the fact that the draw-bar of the box car was insecurely supported and in an unsafe condition, from neglect to repair the same. Upon this issue the evidence in plaintiff's behalf, among other things, also tended to show that the strap or carrying-iron which supported the draw-bar was worn, weak, and loose, and that some of the bolts which were intended to keep this iron strap in place were loose or broken, that it had been out of repair for a considerable time, and the defects were such as could readily be discovered by proper inspection.

2. The evidence of the defective condition of the car, which appears to have been previously in the possession of one of the defendants, the Minneapolis & St. Louis Company, at Minneapolis and during its transit to Albert Lea, a distance of 108 miles, was received and submitted to the jury without any objection or suggestion that the liability did not attach equally to both defendants for any negligence in respect to this car prior to its arrival at Albert Lea. This point is now suggested for the first time; but we think, under the circumstances, the attention of the court should have been called to this matter when the evidence was received, or when the jury were instructed. As the case stands, since we think there was evidence for the jury tending to show a joint liability for negligence in the yard at Albert Lea, it is too late to raise the question in this court as to the competency or sufficiency of the evidence of previous negligence to charge the defendants.

3. Evidence was received, under the defendants' exception, showing a regulation of defendants in relation to the inspection of cars, under which it became the duty of the car inspectors, if any were found

defective or in need of repairs, to mark them so as to indicate that they were in bad order, and hence not to be sent out, but to be sent· to the repair track. We think this evidence was properly received upon the question of defendants' liability, for if the car in question was defective and unsafe, which, as we have seen, was for the jury, then such regulation was binding upon the inspectors as representing the defendants for the protection of employes in the yard, unless it should appear that it was one of the risks of the service assumed by them to handle cars there without regard to inspection, or their condition, or any notice thereof. It may have been a question for the jury, under proper instructions, to determine whether or not, from the nature of the service in which the plaintiff was employed, he was required to proceed to switch cars and make up trains without regard to inspection, and without waiting for it; but instructions of this character were not asked or given, and the evidence does not show that such risk necessarily attached to the plaintiff's business, and was hence assumed by him.

The position taken by defendants' counsel at the trial appears to have been that the plaintiff did not give the inspectors the necessary time to complete their work; and the case was submitted to the jury under instructions, given at defendants' request, that "if he did not do so," or "if he did not know or have reason to believe that all the cars in said train were inspected before he caused them to be moved, he cannot recover." This question was determined by the jury in plaintiff's favor upon the evidence.

As before remarked, it was the duty of the inspectors to examine cars immediately upon their arrival, and the evidence tends to prove that it was their practice to so inspect them upon the track before their removal. The inspection of this train was, in fact, so made on the night in question. There is some conflict in the testimony as to the length of time it would take to properly inspect such a train of cars, and it does not clearly appear how much time had elapsed before the injury; the plaintiff's recollection being that it was from 25 to 40 minutes. But it appears that the inspectors had, in fact, completed their work before the accident. The negligence of the inspectors was therefore proper to be considered upon the question of the

defendants' liability. If it is the duty of the corporation to exercise reasonable diligence to supply suitable and safe instrumentalities for the use of its servants to work with, it is also its duty to use like diligence to keep the same in proper repair. This necessarily involves inspection and examination as incident to the obligation to repair, and, as a corporation must necessarily act through agents, the negligence of its employes in the discharge of such duty is attributable to the corporation. *Solomon R. Co.* v. *Jones,* 30 Kan. 601; *Atchison, etc., R. Co.* v. *Holt,* 29 Kan. 149; *Brann* v. *C., R. I. & P. R. Co.,* 53 Iowa, 595; *Porter* v. *Hannibal & St. J. R. Co.,* 71 Mo. 66, 77, 78; *Chic. & N. W. Ry. Co.* v. *Jackson,* 55 Ill. 492; *Condon* v. *Missouri Pacific Ry. Co.,* 78 Mo. 567; *Crispin* v. *Babbitt,* 81 N. Y. 516; *Fuller* v. *Jewett,* 80 N. Y. 46, 52; *Kirkpatrick* v. *N. Y. C., etc., R. Co.,* 79 N. Y. 240; *Slater* v. *Jewett,* 85 N. Y. 61, 70; *Durkin* v. *Sharp,* 88 N. Y. 227; *Murphy* v. *Boston & A. R. Co.,* Id. 146, 152; *Dana* v. *N. Y. C., etc., R. Co.,* 92 N. Y. 639; *Vosburgh* v. *L. S. & M. S. R. Co.,* 94 N. Y. 374; *Kain* v. *Smith,* 25 Hun, 146; *Wedgwood* v. *Chic. & N. W. Ry. Co.,* 41 Wis. 478, 483; S. C. 44 Wis. 44, 48, 49; *Smith* v. *Chic., etc., Ry. Co.,* 42 Wis. 520, 526; *Richardson* v. *Great Eastern Ry. Co.,* L. R. 1 C. P. Div. 342.

In *Fuller* v. *Jewett, supra,* it is said by the court, (p. 53:) "The duty of maintaining machinery in repair for the protection and safety of employes is the same in kind as the duty of furnishing a safe and proper machine in the first instance;" and "in respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master, and not a mere co-servant with the one who sustains the injury." This corresponds to the language of the same court (Church, C. J.) in *Flike* v. *Boston & A. R. Co.,* 53 N. Y. 549, 553, and (Folger, C. J.) in *Slater* v. *Jewett,* 85 N. Y. 61, 70. Substantially the same doctrine is adopted by this court in *Drymala* v. *Thompson,* 26 Minn. 40, and we think that case must control the disposition of the question under consideration. In some states the courts hold that this rule is not applicable to subordinate employes, as in the case of ordinary car inspectors at the transfer yards, but that the latter are to be deemed fellow-servants of other employes injured through their negligence. *Railroad Cos.* v. *Webb,* 12 Ohio St.

475, 494; *Little Miami R. R.* v. *Fitzpatrick*, 42 Ohio St. 318; *Smoot* v. *Mobile & M. Ry. Co.*, 67 Ala. 13. The rule adopted in these and other cases is followed in *Smith* v. *Flint & P. M. Ry. Co.*, 46 Mich. 258; *Mackin* v. *Boston & A. R. Co.*, 135 Mass. 201, as applied to foreign cars in transit, which a railway company is obliged by law to draw over its line. In the case last cited the court say by way of explanation, (p. 206:) "However it may be as to other cars, the inspectors must be deemed to be engaged in a common employment as to such cars while in transit, and until ready to be inspected for a new service." One reason given is that the company was not obliged to repair such cars. That question we need not consider in this case. This car was loaded at the terminus of the line, and by defendants' own regulations was required to be inspected, and, if damaged, to be properly marked to indicate that fact, at its general yard at Albert Lea, by the agents of the defendants appointed for such purpose.

It is difficult to lay down a general rule which will be applicable in practice, and define accurately the limits of the master's liability in this class of cases. But if the special duty and responsibility belong to the car inspector to examine and determine whether a car is unfit for service, and shall be so marked and sent to the repair track or shop, it is difficult to discover any distinction in kind between his duty and that of the mechanics who make the repairs. It will also be borne in mind that the measure of liability on the part of the company is reasonable care, which must be determined by the circumstances in each case. Experience in the competent and practical management of railroads will naturally determine the nature and frequency of inspections which ordinary care would require should be made between the intervals of the more minute examinations at the general repair-shops. But the general examinations which experience has shown practicable and necessary to be made of cars at the yards designated for such purpose, without causing undue delay while in the course of transportation, would at least include such patent defects as would be readily discoverable upon inspection by a competent person in the exercise of reasonable care. *Richardson* v. *Great Eastern Ry. Co.*, *supra*.

In respect to patent defects in the coupling apparatus, brakes,

wheels, etc., we may assume that the defendants had undertaken the duty of inspection, and intrusted it to the proper agents. As a rule, also, there is a distinction between the special duties of such persons and the service of other employes who are engaged in handling cars and operating trains. It is not the same in kind as that of the switchman, brakeman, or other operative. *Wedgwood* v. *Chic. & N. W. Ry. Co.*, 44 Wis. 44; *Schultz* v. *Chic., etc., Ry. Co.*, 48 Wis. 375. The service of the former class relates wholly to the matter of the care and repair of machinery, the use of which is attended with constant danger to other employes unless maintained in a safe condition; and they represent the master, not in the capacity of superior officers placed over other employes, but because performing the master's duty in respect to safe instrumentalities. Placing and keeping such machinery upon the road in actual use would be an assurance to ordinary servants that the same is fit and safe, in so far as the exercise of reasonable diligence could make it. *Murphy* v. *Boston & A. R. Co.*, 88 N. Y. 146, 152. So, in the matter of separating damaged cars from those remaining in use with a view to repairs, the cases proceed upon the principle that enough must have been done by the master to indicate, in conformity with some proper regulation or usage of the company, the condition or character of such cars, for the protection of employes who are to handle them. *Flannagan* v. *Chic. & N. W. Ry. Co.*, 50 Wis. 461, 471; *Watson* v. *H. & T. C. Ry. Co.*, 58 Tex. 434; *Fraker* v. *St. P., M. & M. Ry. Co.*, 32 Minn. 54. And the rule that the corporation is bound to know the defective condition of its cars within a reasonable time, is in harmony with the doctrine that the agents charged with a special duty of looking after and repairing its cars and machinery, *pro hac vice* represent the master.

As before stated, this case does not, we think, differ in principle from *Drymala* v. *Thompson, supra.* There the negligence of the section foreman engaged in repairing the track, who would have otherwise been deemed a fellow-servant with the injured party, was held to be that of the defendants, and it would have constituted no defence that the company had employed competent men, adopted proper regulations, or provided suitable materials, and an adequate system for supervising and repairing its track. On the other hand, in *Brown* v.

*Winona & St. P. R. Co.*, 27 Minn. 162, a road-master, engaged with the injured party in operating machinery, was held not to represent the company. It is the kind of service, not the grade, which distinguishes these two cases. The one related to maintaining safe instrumentalities; the other, to the use of them.

The application of the rule, as well as the question of the degree of risk assumed by employes, will, of course, be largely influenced by the special circumstances of any particular case. And so, as to different kinds of business, the amount of care required, and the system to be adopted and carried out, are to be determined by the circumstances of each case, depending upon the nature of employment, the extent, hazard, and usages of the business, the kind of machinery used, and the risks incident thereto. *Kain* v. *Smith*, 25 Hun, 146.

4. A witness acquainted with plaintiff's physical condition, though not a physician, was permitted to testify, against the objection of the defendants, to the state of plaintiff's health before and after the accident, and, among other things, that he had since had a skin disease. As he merely stated facts within his observation, and expressed no opinion, the evidence was competent.

5. The application for a new trial on the ground of misconduct of the jury was made upon affidavits which are met by counter-affidavits, and was thus determined upon conflicting evidence. It also appears that some of the affidavits on plaintiff's part are not returned to this court. We see no reason, therefore, for questioning the correctness of the decision of the trial court on this point. *Peterson* v. *Faust*, 30 Minn. 22. So, also, as respects the damages, which are claimed to be excessive; the question was within the province of the jury to determine; and considering the nature of the injury, the age of the plaintiff, extent of his disability and suffering, we are unable to say that the trial court erred in refusing to set aside the verdict for such cause.

Order affirmed.

MITCHELL, J., *dissenting.* As I understand the facts of this case, the duty of these "car inspectors" was simply to make a general cursory examination of cars *en route*, upon their arrival at the yard, so as

to detect any patent defects.    Their duty was substantially the same as that of local examiners, employed at certain intervals along the line of every railroad, who make a like cursory examination of the cars of a train in transit.    They are ordinary servants of the company, intrusted with no general control or discretion in the management of the company's business or any department, but simply charged with the performance of certain special executive duties in the matter of such local inspection.    I think they were mere fellow-servants with those employed in running the trains or moving the cars.

There is much difference of opinion as to whether the doctrine of "common employment" works equitably, as applied to the large business enterprises of the present day, with their numerous departments and different grades of service.    But the doctrine has become too thoroughly imbedded in the jurisprudence of England and this country to be disturbed by the courts.    If it is to be changed, it must be by the legislature.    It seems to me that the doctrine laid down in the opinion of the court in this case, if carried to its logical consequences, goes a long way towards breaking down this well-established rule, which exempts the master from responsibility for injuries to his servants caused by the negligence of their fellow-servants.    This doctrine has been so much and so often considered in the books that it would be useless to enter upon any general discussion of it at this time.    But it seems to me that confusion has sometimes arisen from a misapprehension or misapplication of certain maxims or rules bearing upon this subject.

It is often remarked that as corporations can only act through natural persons, who are all in a sense servants of the corporation, to hold general agents or superintendents, to whom is intrusted the management and control of its business, to be fellow-servants with all subordinate employes, would be to relieve the corporation of all liability for negligence.    It seems sometimes to be inferred from this that a different rule as to such liability is to be applied to corporations from that applied to natural persons.    I do not so understand it.    In every business there must be some natural person to whom its management and control is intrusted, and who is therefore, if not the master in person, the representative of the master, and for whose acts

the master is responsible. If a natural person intrusts the control and management of his business to an agent, such agent is the *alter ego* of the master precisely as if the same thing be done by a corporation. The only difference is that in the case of a corporation there must be such a representative, whereas in the case of a natural person there may not be, for he may manage his own business in person. But it seems to me that in either case, when the relation of the employe to the business and the master is the same, the same rule must be applied in determining whether he is the representative of the master or merely a fellow-servant as to other employes.

Again, a familiar rule is that the master is bound to use ordinary care in furnishing suitable and safe instrumentalities for the use of his servants. Included in this is that of maintaining them in a safe condition. *Repairing* is, in a sense, *furnishing*. And, as necessarily incident to the duty of "maintaining," is the duty of providing an adequate system of inspecting, examining, and guarding these instrumentalities. It is also the rule that this duty of furnishing and maintaining safe instrumentalities is a primary duty of which the master cannot relieve himself by clothing some general agent with the power, and charging him with the duty, of making performance for him, but that the failure of such agent will be the failure of the master. This rule has been sometimes understood as meaning that the master is responsible to his servants for the negligence of every employe, however subordinate his station, who is engaged in performing the most common executive duties in the matters of repairing, examining, or watching the instrumentalities intended for the use of other servants. I think this is a misapprehension of the rule, which has sometimes arisen from losing sight of the distinction between one who is clothed with the powers of the master in the control and supervision of some department of the business, and who is *pro hac vice* the representative or *alter ego* of the master, and one who simply performs what may be termed mere executive details.

Of course, in the multitude of cases on this subject with which the reports abound, often conflicting, and frequently not well considered, some authority can be found for almost any proposition. But I have not found any case well considered, either upon principle or upon an

examination of the authorities, which seems to me to carry the rule to any such length. I find no support for it in the English cases. The supreme court of Massachusetts, which is one of the few whose decisions on this question are anything like consistent, or seem to be governed by some uniform principle, has always held the master strictly to the performance of this primary duty of exercising ordinary care in furnishing and maintaining safe instrumentalities for the use of his servants, and refused to permit him to shield himself behind the fact that he had clothed some general agent with the power, and charged him with the duty, of performing it. This is illustrated by the case of *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240, in which they held the company responsible for the negligence of the *master mechanic* in not repairing an engine, he having entire charge of that department of the business.

But the distinction which I have alluded to is distinctly brought out in the subsequent case of *Holden* v. *Fitchburg R. Co.*, 129 Mass. 268, in which the reasons and limits of the rule and the authorities on the subject are ably discussed by Gray, C. J., and in which it is, in effect, held that a track repairer and a brakeman are fellow-servants. Almost as a corollary from this last decision followed that of *Mackin* v. *Boston & A. R. Co.*, 135 Mass. 201, which holds that a car inspector and a brakeman employed on the same car are fellow-servants,—a case entirely analogous to the present one. I have not overlooked the fact that that was a foreign car in transit over the company's road. I also notice the *caveat* in regard to that which the court put into their opinion. But, whatever state of facts they might have had in mind in doing so, it could not have been anything affecting the principle involved in the present case; for it seems to me that this duty of casual inspection of cars while in transit must be the same, whether the car is a foreign one or a domestic one.

In New York the decisions are so often conflicting that the value of any particular one largely depends upon the composition of the court at the time, or the ability of the judge who wrote the opinion. The primary character of the duty of the master to furnish safe instrumentalities is clearly and ably defined by Folger, J., in *Laning* v. *N. Y. C. R. Co.*, 49 N. Y. 521, 532. But the limits to the rule, and

the common misapprehension as to its applicati  ~referred to, are
very clearly brought out by Allen, J., in *Malone* v. *Hathaway*, 64 N.
Y. 5. The distinction between a general agent, intrusted with the
control of some branch or department of the business, and who there-
fore represents the master, and a servant employed to perform some
special duties or executive details in the same department, is also
pointedly made by Folger, C. J., in *Slater* v. *Jewett*, 85 N. Y. 61.
Neither of these cases has ever been questioned or criticised, although
two or three late cases in the same court, which seem not very care-
fully considered, appear to lay down a somewhat different rule, but
without much discussion or reference to the authorities.

This court has itself recognized the same distinction. In *Brown* v.
*Minn. & St. L. R. Co.*, 31 Minn. 553, we held that a station agent
who had general charge of the tracks in and about his station, and
whose duty it was to keep them clear and in safe condition for
passing trains, was a fellow-servant with an engineer on such a train.
In *Roberts* v. *Chic., etc., Ry. Co.*, ante, p. 218, decided at the present
term, we held that a switch-tender and a baggage-master were fel-
low-servants. *Drymala* v. *Thompson*, 26 Minn. 40, is not in conflict
with this distinction. That case was decided upon the ground that
the "section foreman," to whom was intrusted the duty of repairing
or "furnishing" the track, was the representative of the master; and
this was at the time, and is yet, generally considered what might be
termed a "border case."

The management of an extensive business, like that of operating a
railroad, includes so many departments and so many grades of serv-
ice that it may not always be an easy matter to draw the line be-
tween those who are to be deemed "vice-principals," or representa-
tives of the master, and those who are to be deemed "fellow-servants,"
as to other employes; but the fact of such a distinction is every-
where recognized. To hold that the master is responsible to his serv-
ants for the negligence of every employe of the most subordinate
rank who is engaged in the department of repairing, examining,
watching, or guarding the instrumentalities used by other employes,
would virtually abrogate the whole doctrine of "common employ-
ment." There is hardly an employe in the service of any railroad

whose duties do not, in part at least, relate to the matter of maintaining in safe condition the track or rolling stock. If the rule be that all these *pro hac vice* represent the master, and are performing his duty, the same rule must be applied to all masters alike. Such a rule, if applied to farmers, manufacturers, and others, would, I think, effect a radical change in what has been supposed to be the law. And yet this is, I think, the logical result to which the opinion in this case would seem to lead; for I can see no distinction in principle between these "car-inspectors" and switch-tenders, station agents, guards, watchmen, and the like, in so far as their duties relate to maintaining in safe condition the machinery and other instrumentalities of the master, designed to be used by his employes.