WILLIAM MUNCH v. GREAT NORTHERN RAILWAY COMPANY.

December 21, 1898.

Nos. 11,327—(70).

Railway—Injury to Brakeman in Coupling Cars—Standard Coupler— Negligence and Contributory Negligence Questions for Jury.

*Held*, in an action to recover damages for personal injuries sustained by plaintiff, a brakeman in defendant's employ, while coupling cars equipped with what is known as the "standard coupler," that, on the evidence, the question of plaintiff's contributory negligence was for the jury; and that the question of actionable negligence on the part of defendant, in respect to the care and inspection of the coupler by which plaintiff was injured, was also for the jury.

Appeal by defendant from an order of the district court for Polk county, Ives, J., denying a motion for a new trial after a verdict for $7,500 in favor of plaintiff. Affirmed.

*C. Wellington*, for appellant.

*H. Steenerson* and *W. E. Rowe*, for respondent.

COLLINS, J.

Plaintiff had a verdict in a personal injury action, and defendant appeals from an order denying its motion for a new trial. Its main

contentions are that there was no actionable negligence shown at the trial on its part, and that from the evidence it conclusively appeared that plaintiff was guilty of contributory negligence, and for that reason should not have recovered.

Plaintiff was in defendant's employ as a brakeman, and had been so employed for about two years prior to the day of the accident. He was then engaged in coupling freight cars in defendant's yard at Crookston. A box car had remained in the yard about 20 days, and was then put at the end of a string of cars, to be coupled onto another car standing on the main track. It was shown that both of these cars belonged to defendant, but there was some dispute as to whether the one last mentioned was a box or a flat. Both cars were equipped with what is known as the "improved standard coupler," an article somewhat difficult to describe, but which is supposed to couple cars automatically, and without requiring a person to stand between them as they come together. On each coupler is a fixed jaw, and also a movable "hooking jaw," and it is defendant's claim that on a straight track, as was the one where the accident happened, and with cars of the same make as were those in question, the coupling can always be made with but one of these movable jaws open. The plaintiff admits that, under such circumstances, the coupling will usually be made, but that to do the work properly, and to make a "sure" coupling, the movable jaws of both couplers must be open, and, further, that this is the usual and customary way of doing this kind of work.

A lever runs horizontally along the end of the car from near the outside, to a point a few inches above the coupler, and is there connected with what is called the lifting pin in the coupler itself, by means of a small chain hanging perpendicularly. Standing outside the car, the brake or switch man can operate the lever, and pull the pin up a few inches, so that the movable jaw will swing a short distance to one side. If the pin and other parts of the coupler are in good condition, the pin cannot be pulled entirely out of its socket, but is stopped by a spring and held fast at a certain point. If two cars are coupled, when the pin is thus raised the movable jaw of the coupler thus operated on is pulled to one side by the closed jaws of the other coupler, and the cars uncouple and separate. The jaw

thus pulled to one side, weighing over 50 pounds, then remains open, unless closed by hand, or by impact, when brought in contact with another coupler. When the coupler is closed, the raised pin drops to its place and remains there.

It stands admitted that, if two couplers are brought together on a curved track, or if they are badly worn, or if the cars are of different makes, they are not sure to work, unless the movable jaws of both are open; for one has to slip past the other, with very little room for variation. The plaintiff was an experienced man, and knew the manner in which these couplers do their work. He also knew that the coupler on the stationary car was open, and the movable jaw in proper position for locking with its counterpart on the moving car. The latter, one of a string before mentioned, was moving slowly, and plaintiff was walking beside it as the stationary car was approached. When within a few feet of the latter, plaintiff pulled the lever of the moving car, and stepped in front of it, between the rails, for the purpose, as he claimed, of opening the movable jaw, that a "sure" coupling might be made. He seized the jaw with his right hand, pulled it with considerable energy, and it immediately swung out of place, too far towards him, and would have fallen to the ground if plaintiff had not used all of his strength in pushing it back. It swung too far, because the pin had been broken in such a way that nothing prevented its slipping entirely out of the socket when raised by the lever, and thus permitting the movable jaw from becoming wholly detached from other parts of the coupler. And before plaintiff could remove his hand and arm, and before he could extricate himself from a dangerous position between the cars, they came together, and his hand and arm were caught in the couplers, and badly crushed, amputation of the arm being necessary. It was shown that the coupling was made, and that another brakeman, who happened to be near by, pulled the lever upon the stationary car, gave the go-ahead signal to the engineer, and thus released plaintiff from a grip which the couplers had upon the injured arm.

As before stated, it is defendant's contention that from the verbal evidence given upon the trial, and from two couplers of the same size and make, which were brought before the jury, it conclusively

appeared that, with the movable jaw of the coupler of the stationary car fully opened and ready for business, of which he knew, it was wholly unnecessary for plaintiff to open the jaw of the coupler of the moving car, or to go in front of it, for any purpose whatsoever. If it did so appear, from any evidence introduced upon the trial, it must be conceded that plaintiff had no cause of action. No rule of the company was shown which regulated, or attempted so to do, the manner in which couplings with the standard coupler should be made, the only rule introduced by defendant being one which required that

"Great care should be used in coupling and uncoupling cars; extra care is required when coupling foreign cars."

This brings us to a consideration of the evidence upon the vital point above mentioned. According to plaintiff's testimony, he attempted to make the coupling in the ordinary manner, and exactly as he and other employees of defendant company usually made couplings with the standard coupler. He also testified that he stepped between the rails, and in front of the moving car, when it was five or six feet from the other; and that when he discovered that the pin was broken, and the jaw was sliding out of place, he pushed it back to prevent its falling upon his feet, or in such a way that he would be tripped and thrown under the wheels. When questioned as to the necessity of opening the jaw of the coupler on the moving car, with its counterpart on the stationary car open, he stated that such opening was necessary in order to make a "sure" coupling, although he admitted that sometimes couplings were made with but one jaw opened.

A witness for defendant, the conductor in charge at the time of the accident, then testified that on a straight track couplings could always be made with only one jaw of the standard coupler open, the cars being of the same size; and sometimes it might happen that couplings could not be made with the jaws open on both couplers, in which cases links and pins would have to be used. And, further, that couplings are surer when made with both movable jaws open, and that "we often open both; often where one is open we open the other," in order to make sure of the coupling. It also

appeared from the conductor's testimony that occasionally the springs of a car would become worn, and settle down, so that the couplings would not be the same distance from the ground, thus rendering it much more difficult to couple with but one open jaw.

Another witness, a locomotive "foreman" in defendant's employ, testified on this branch of the case, giving it as his opinion that it was not necessary to open both jaws when the cars were upon a straight track. He was also examined as to the couplers brought into court, as before stated, and said that there was usually two or three inches side play or side motion with these couplers, and that they were likely to be loose, and to move sideways, to this extent, one way or the other.

So far as shown by the settled case, this was all of the evidence introduced by either party as to the necessity of stepping in front of the moving car, and, by hand, opening the coupler thereon as it approached that upon the stationary car, or as to the ordinary and usual manner in which such couplings were made. Upon this evidence, the question of plaintiff's negligence, when attempting to make the coupling in the manner shown, was for the jury. From the testimony it seems clear that defendant might naturally and reasonably anticipate or expect that, for the purpose of properly discharging their duties, switch or brake men might open both couplers instead of depending upon one.

Again, as before stated, two of these couplers were exhibited in the court room to the jury, and were operated for their benefit. The foreman testified that there was usually two or three inches of side play or motion to these couplers. While we have no means of knowing, it is possible that these experiments demonstrated to the jury that the side motion rendered the opening of both jaws, for one must slide past the other in order to lock, quite necessary, and had therefore become the usual and ordinary manner of doing the work.

Defendant's counsel also contends that plaintiff was conclusively shown to be guilty of contributory negligence when going between the cars, for the reason that, if it was customary and necessary to have both jaws open, the one in the moving car could easily have been put in position, long before it came within five or six feet of

the stationary car, allowing the plaintiff to perform his work in comparative safety. There might be cases where the court could say that a brakeman was reckless and extremely negligent in exposing himself to danger while coupling cars, depending upon the distance between cars to be coupled, the character of the ground between the rails, and the rapidity with which one or both of the cars were moving; but we cannot hold, where the intervening space is five feet at least, the ground level and unobstructed, as it was in this particular instance, and the moving car is going no faster than a man ordinarily walks, that there has been contributory negligence on the part of an employee which will prevent a recovery of damages in case he is injured.

One thing more should be mentioned in this connection. It is urged by counsel that plaintiff should not be allowed to recover because he was not justified in attempting to push the jaw back to its place, which attempt probably led to the injury; that he could have readily escaped the impending danger by letting go, and stepping out from between the cars. A man placed in a perilous position, as this was, cannot be expected to act with the deliberation of one who is not in peril. He must act instantly, and plaintiff was not required to stop and consider whether his chances to escape injury were greater if he let go of the jaw than they would be if he should hold on.

Defendant's counsel further contends that there was no actionable negligence shown on the part of defendant corporation. The car in question had been in the yard at Crookston for about 20 days, as heretofore stated, when the plaintiff was injured, and from the testimony it appeared that a car repairer was kept at work in this yard. From the appearance of the pin immediately after the accident, it had been broken some time, and it is ably argued that, as defendant's duty to inspect the coupling would be complied with when it exercised such reasonable care in that regard as would be demanded of a person of ordinary care and prudence under like circumstances, it cannot be held liable for want of inspection in this case, because it did not appear from the evidence that such a break could reasonably be anticipated, or that danger to an employee could reasonably be apprehended, if there was such a break.

Under the evidence here, it was a question of fact for the jury to pass upon whether defendant had or had not exercised reasonable care in respect to car inspection in this particular case. It might reasonably anticipate that the pins, or other parts of this cast-iron coupler, might become broken, especially where they lock by contact, more or less severe. It might also anticipate that, if a pin was broken, it would be because of its construction, at the point where this break actually occurred; and it might also anticipate that, when a pin broke at this particular place, there was imminent danger to any employee whose business it was to seize hold of and attempt to open a jaw of the size and weight of that in question.

It is true that the break was to some extent concealed while the pin rested in its socket, but as it extended, when in place and in good condition, clear through the coupler, and protruded some inches beneath, a glance at that point would have indicated to the car inspector or repairer that a part of the pin was missing. This would have clearly shown that it had been broken and was in an unsafe condition. It would have suggested that operating the lever and lifting what remained of the pin was unsafe and dangerous to any person engaged in opening the jaw with one hand while he operated the lever with the other.

And again, the broken condition of the pin would have been discovered by the car inspector or repairer if he had merely operated the lever, for it would then have been lifted out of the coupler, as it was when plaintiff undertook to make the coupling. In view of the circumstances shown upon the trial, that this break was not new, but was an old one, that the car had been in the yard for over 20 days, and that the condition of the pin was easily discoverable, we cannot declare, as a matter of law, that there was no actionable negligence on defendant's part in the matter of inspection.

It was the duty of defendant company to provide safe and suitable appliances and instrumentalities for its employees to work with, and to exercise reasonable diligence to keep these appliances and instrumentalities in proper repair. This necessarily involves examination and inspection as incident to the obligation to repair, and, in the discharge of this duty, the corporation must of necessity act through servants or agents, for whose negligence as to these

matters it is held responsible (Tierney v. Minneapolis & St. L. Ry. Co., 33 Minn. 311, 23 N. W. 229); and this is especially true when these appliances and instrumentalities are in constant and severe use, and liable to get out of repair (Moon v. Northern Pac. R. Co., 46 Minn. 106, 48 N. W. 679). The question of defendant's negligence, on the facts before us, was peculiarly one for the jury.

The order appealed from is affirmed.