CATHERINE CLAVIN *vs.* WILLIAM TINKHAM COMPANY.

JULY 6, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Master and Servant.   Vice-principal.   Fellow-servant.*

Plaintiff, a weaver was operating a loom in defendant's mill, and was injured by a shuttle which flew out of a loom which was being repaired. While the repairs were in progress plaintiff seated herself in front of that loom. The repairs were made by a loom-fixer, who, while putting the machine in condition to run, accidentally set the loom in motion, causing the injury:—

*Held*, that the loom-fixer, in the work which he was performing in repairing the loom, represented the master, and was not a fellow-servant of plaintiff.

(2)  *Contributory Negligence.   Question of Fact.*

*Held*, further, that the court properly left the question of the contributory negligence of the plaintiff, in taking a seat in front of the loom, to the jur as a question of fact.

TRESPASS ON THE CASE for negligence.    Heard on exceptions of defendant, and overruled.

BLODGETT, J.    The case at bar is thus stated on the defendant's brief:

"This is an action of trespass on the case for negligence brought by Catherine Clavin against the William Tinkham Company, a corporation.    The William Tinkham Company is engaged in the manufacture of worsted and woolen goods, having a mill at Harrisville.    The plaintiff, a weaver, was on the nineteenth day of June, 1906, operating a loom in the defendant's mill.    On that day certain minor repairs were being made by a loom-fixer upon a loom in the weaving room, where the plaintiff was working.    The loom which was being repaired was the one adjacent to the plaintiff's loom, and was operated by one San Souci.    While the work of repairing was in progress she took the seat at San Souci's loom, and while in this position was injured by a shuttle which flew out of San Souci's loom.

" A loom-fixer was called upon to tighten the picking cam, which is fastened to a shaft running underneath the loom.    To get at the picking cam it was necessary to lift the warp-beam out of its position and rest it on the framework of the loom. The loom-fixer having made the adjustment was lowering the warp-beam into its position, with the assistance of San Souci, when he accidentally touched the shipper which engaged the friction clutch and set the loom in motion; the shed through which the shuttle passed being loosened by reason of the warp-beam not being in position, the shuttle flew from the loom and caused the injury to the plaintiff.    As a result of this injury, the plaintiff lost an eye and claims to have suffered other injuries."

A demurrer to the plaintiff's declaration was heard before Mr. Justice Stearns, was overruled, and the defendant's exception was noted thereto.

This case was tried before Mr. Justice Stearns and a jury, in the Superior Court at Providence, on December 8th, 9th, and 10th, 1908, and a verdict returned therein in favor of the plaintiff for the sum of forty-two hundred dollars ($4,200.).    Within seven days after the rendition of said verdict the defendant

filed its notice of intention to prosecute a bill of exceptions, and said bill of exceptions was duly filed and notice thereof duly given to the plaintiff, and the case is now before this court on defendant's bill of exceptions.

The bill of exceptions alleges six grounds of exceptions, as follows:

1.   To the decision of Justice Stearns, entered February 25th, 1908, overruling the defendant's demurrer to the declaration filed in said cause as appears of record.

2.   To the refusal of the trial justice to direct a verdict for the defendant, as appears on page 150 of the transcript of testimony in said case.

3.   To the charge of the trial justice at the trial of said cause, that the loom-fixer in fixing the loom in question was attending to a duty which the employer owed to the employee, and that he was a vice-principal, as appears in the judge's charge on page 158 of the said transcript.

4.   To a certain ruling of said justice in refusing to charge the jury as requested by the defendant, as shown on star page 162 of said transcript, designated exception 1.

5.   To a certain ruling of said justice in refusing to charge the jury as requested by the defendant, as appears on star page 162 of the said transcript, designated exception 2.

6.   To the refusal of the said justice to charge the jury as requested by defendant as appears on star page 163 of said transcript.

The trial justice instructed the jury, without objection, that "there are several counts in the declaration, which is the statement of the plaintiff's case, and the only count on which you can find a verdict is the last count," thus eliminating all questions arising under any other counts in the declaration.

(1)   The charge of the trial justice on page 158, to which exception is taken, is as follows:   "I charge you, gentlemen, that under the circumstances here that the duty, that the fixing of that loom, that the loom-fixer was attending to a duty which the employer owed to the employe."   The instruction was correct.   It is in substance the converse of the contention of the defendant in his second ground of demurrer to the third count, "that it appears by said count that the negligence of the loom-

fixer, if any, was the negligence of a fellow-servant," which contention the trial court properly overruled. The cause of the accident in question was the neglect of the loom-fixer to remove the belt while the necessary adjustments were being made, so that an accidental moving of the shipper could not prematurely start the loom, or the neglect by the loom-fixer to remove the shuttle, so that, if the loom were prematurely started, the shuttle would not fly from its place and cause damage.

In *Crandall* v. *Stafford Mfg. Co.*, 24 R. I., 555, it was said by this court (p. 556): "The witness, John S. Grant, who erected the 'hanger' upon which the pulley-shaft was placed, was not, in the doing of that work, a fellow-servant with the plaintiff. The 'hanger' was part of an appliance in the mill; it was put up under the oversight of the superintendent, and was intended to be used in facilitating the doing of certain work which the defendant corporation was carrying on. The duty of properly constructing and fastening said appliance, therefore, was clearly one which the law devolved upon the defendant, as master, and it could not divest itself of this duty by devolving it upon another. As said by this court in *Mulvey* v. *R. I. Locomotive Works*, 14 R. I., 204, "It is the duty of a master, who furnishes machinery for his servants to operate or work about, to see to it that it is reasonably safe. He cannot divest himself of this duty by devolving it on others, and if he does devolve it on others, they will simply occupy his place, and he will remain as responsible for their negligence as if he were personally guilty of it himself." See cases cited.

So in *Jaques* v. *Great Falls Manufacturing Co.*, 66 N. H. 482, which in many respects resembles the case at bar and was upon the following facts: "Clark, J. The motion for a nonsuit presents the question whether the jury could properly find a verdict for the plaintiff upon the evidence submitted. *Paine* v. *Railway*, 58 N. H., 611. The evidence produced by the plaintiff,—that the shuttle would not fly out of a loom unless the machinery was defective or out of repair; that the plaintiff had no knowledge of the machinery and was not allowed to meddle with it, and in case it did not operate properly was required to call on Burke, a loom-fixer employed by the defend-

ants to look after the looms operated by the plaintiff and keep them in proper repair; that the shuttle flew out of one of her looms about ten o'clock in the forenoon of the day of the injury, and she notified Burke, who examined it, made whatever repairs he thought necessary, and set it running; that at eleven o'clock the shuttle caught in the 'binder' or in the 'picker' and she again called on Burke, who again examined the loom, repaired it, and put it in operation; that shortly after, and before twelve o'clock, the shuttle flew out and struck her, putting out one of her eyes; and that she had watched the loom more closely than the others because its actions made her afraid of it,—was evidence tending to show that the plaintiff, exercising reasonable care, was injured by the defendants' negligence in failing to provide suitable machinery for her use; and, in the absence of rebutting evidence, was sufficient to sustain a verdict for the plaintiff. The motion for a nonsuit was properly denied.

"The defendants excepted to the refusal to instruct the jury that Burke, the section hand and loom-fixer, being engaged in the same common employment and under the same general control, was a fellow-servant of the plaintiff, and that the defendants were not liable for his negligence. As the servant assumes the ordinary risks of his employment including the negligence of his fellow-servants, the master is not responsible to the servant for injuries happening from that cause. But the rule of law which exempts the master from responsibility for such injuries does not relieve him from the duty which he owes to the servant to provide suitable and safe machinery and appliances for the use of the servant in his employment. *Fifield* v. *Railroad*, 42 N. H. 225; *Hanley* v. *Railroad*, 62 N. H. 274; *Ford* v. *Railroad*, 110 Mass., 240, 260; *Hough* v. *Railroad*, 100 U. S., 213. This duty may be, and in case the employer is a corporation must always be, discharged by agents and servants, and the agent or servant charged with its performance, whatever his rank of service may be, stands in the place of the employer, who thereby becomes responsible for the acts and chargeable with the negligence of such agent or servant.

"In many kinds of service the care and keeping of tools and machinery in a condition of safety require merely the attention and repairs occasioned by ordinary use and wear, and are properly a part of the regular business of the servant engaged in the use of such tools and machinery. In such cases the duty of the employer is performed by furnishing safe tools and machinery and the means of making needed repairs, and the duty of making the repairs may be intrusted to servants, and any neglect in the performance of this service is the negligence of a servant. *McGee* v. *Boston Cordage Co.*, 139 Mass. 445. But in cases where skill and practical knowledge are required in keeping machinery in a reasonable condition as to safety, beyond what is needed in operating it, it is the duty of the employer to supply the necessary intelligence, skill, and experience in the care and inspection of the machinery to protect the servant from injury; and for any failure to exercise proper care and skill the employer is accountable.

"The question who are fellow-servants within the rule exempting the employer from the consequences of the negligence of fellow-servants, is not ordinarily determined by rank or grade of service, but by the character of the service performed or acts complained of. As a general rule, those doing the work of a servant are fellow-servants, whatever their grade of service; and a servant of whatever rank, charged with the performance of the master's duty toward his servants, is, as to the discharge of that duty, a vice-principal, for whose acts and neglects the master is responsible, because he has invested him with the responsibility of doing that which the master is bound to have carefully performed. *Moynihan* v. *Hills Co.*, 146 Mass. 586, 593; *Daley* v. *Railroad*, 147 Mass., 101, 114; *Booth* v. *Railroad*, 73 N. Y. 38; *Fuller* v. *Jewett*, 80 N. Y. 46; *Davis* v. *Railroad*, 55 Vt. 84; *Tierney* v. *Railway*, 33 Minn. 311; *Cincinnati, etc., Railroad Co.* v. *McMullen*, 117 Ind. 439; *Ell* v. *Railroad*, 1 N. D. 336—S. C. 43 Ala., L. J. 414; *Dayharsh* v. *Railroad*, 103 Mo. 570."

"The test whether the plaintiff and Burke were fellow-servants was, not whether they were engaged in the common employment of manufacturing cotton cloth under the same general

control and paid by the same principal, but whether Burke represented the defendants in the responsibility or performance of any duty which they owed to the plaintiff. It was the duty of the defendants to furnish suitable machinery and keep it in suitable condition for the plaintiff's use. The duty of keeping the looms in proper repair required experience and the exercise of mechanical skill, and was especially intrusted to Burke; and so far as the discharge of that duty was concerned Burke represented the defendants, and any negligence on his part in the performance of that duty was the negligence of the defendants.

"It is immaterial that Burke exercised no control or authority over the plaintiff. The negligence of the defendants complained of was, not in ordering the plaintiff into a place of danger, but in failing to use ordinary care to prevent the exposure of the plaintiff to unusual hazard in her ordinary employment."

The fourth and fifth exceptions are overruled. The instructions called for were not applicable to the undisputed testimony in the case.

(1) The sixth exception is to the refusal of the court to instruct the jury (p. 163): "That the plaintiff, having been guilty of contributory negligence in voluntarily placing himself (herself) in a place of danger, cannot recover." The charge was properly refused, the judge having properly instructed the jury (p. 154): "Now, then, that is a question of fact for you whether or not under these circumstances she assumed a risk there which she ought not to assume, whether she put herself in a place of danger. If she did, if she put herself there without any excuse for it, without any reason for it, why then, she has got to take the loss that falls on her, if that is the case. . . . . That is a question for you to pass on."

The defendant's exceptions are overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*John W. Hogan,* for plaintiff.

*Tillinghast and Murdock,* for defendant.