WILLIAM ELL, Respondent, *v.* NORTHERN PACIFIC RAILROAD
COMPANY, Appellant.

**1.  Negligence — Fellow-Servant.**

The negligence of the foreman of a gang in failing to block a pile
which was shoved against plaintiff, injuring him, because it was not
blocked, is the negligence of a fellow-servant, although the foreman had
authority to employ and discharge plaintiff, and the plaintiff was un-
der his superintendence and control in doing the work in the perform-
ance of which he was injured.

**2.  Who Are Fellow-Servants.**

Whether a negligent servant is the fellow-servant of an employe who
is injured by the carelessness of the former depends, not upon the rela-
tive ranks of the two servants, but upon the character of the work, the
negligence with respect to which resulted in the injury.

**3.  When Negligence of Servant is the Negligence of the
Employer.**

The negligent performance or omission to perform a duty which the
master owes to his employes is at common law the negligence of the
master, whatever the grade of the servant who is in that respect care-
less.   The negligence of a servant engaged in the same general business
with the injured servant is the negligence of a fellow-servant, whatever
position the former occupies with respect to the latter, as to all acts
which pertain to the duties of a mere servant, as contradistinguished
from the duties of the master to his employes.

**4.  Negligence; Measure of Damages.**

In actions for damages for negligence, interest may be awarded or
withheld in the discretion of the jury.

(Opinion Filed January 15, 1891.)

*A*PPEAL from district court, Stutsman county; RODERICK
ROSE, Judge.

John C. Bullitt, Jr. and John S. Watson, for appellant:  The
judgment can be sustained only by the adoption of the superior
servant limitation of the fellow-servant rule.   The idea that the
master is responsible to inferior servants for acts of superiors
has produced confusion in the decisions.  In general it is favored
by the southern and western courts, and by the U. S. supreme
court; but is repudiated by courts whose number and authority
(saving the U. S. supreme court) outweighs that of those favor-

ing the doctrine: McKinley on Fellow Servants, §§ 111 to 167; Dillon in 24 Am. Law Rev. p. 118; Crispin v. Babbitt, 81 N. Y. 516; Hanathy v. R. R. Co., 46 Md. 280; Zeigler v. Day, 123 Mass. 152; Hogan v. R. R. Co., 49 Cal. 128; Am. and Eng. R. R. Cases, vol. 17, p. 516: Fanvell v. R. R. Co., 4 Metc. 49; Herbert v. R. R. Co., 3 Dak. 38; Elliot v. R. R. Co., 41 N. W. 757, etc. The company's duty to the plaintiff was fulfilled when it had furnished suitable appliances for the work; the negli-. gent use of the appliances by a fellow servant of whatever grade was one of the plaintiff's employment.

S. L. Glaspell for respondent: In adopting unqualifiedly the superior servart limitation of the fellow-servant rule this court would follow the Supreme Court of the United States and every state supreme court which has passed upon the question as an original proposition since 1884, when C. M. & St. P. R. Co. vs. Ross, 112 U. S. 377, was decided and the superior servant limitation given a full and unqualified adoption by the highest court in this country. The rule as laid down by Mr. Justice Field in that decision is as follows: "There is, in our judgment, a clear distinction to be made in their relation to their common principal, between servants of a corporation, exercising no supervision over others engaged with them in the same employment, and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is that of direction and superintendance."

The rule is recognized in Elliott vs. Railroad Co., 5 Dak. 223, s. c. 41 N. W. 758; and see Railroad Co. v. Fort, 17 Wall. 553, s. c. 21 L. Coop. Ed. 739.

By the clear weight of authority it is now held, that the general rule, that the master is exempt from liability to one servant for an injury caused by the negligence of a fellow servant, does not apply where the injured servant is inferior in rank to the one by whose negligence he is injured, and is under the direction and control of such other and is bound to obey his orders: Beach on Contrib. Neg. § 110; Deering on Neg. § 204; Thompson on Neg. vol. 2, p. 1028; Sherman & Redfield on Neg. (4th Ed.) § 226; Wharton on Neg. § 229; Gravelle v. M. & St. L.

Ry. Co., 10 Fed. 711; Miller v. U. P. R. Co., 12 Fed. 600; Thompson v. C. M. & St. P. R. Co., 14 Fed. 564; Mason v. Edison, 28 Fed. 228; Borgman v. St. L. & O. R., 41 Fed. 667; Slater v. Chapman, (Mich.) 35 N. W. 106; Berea Stone Co. v. Kraft, 31 Ohio St. 287; Brown v. Sennett, (Cal.) 9 Pac. 74; Railroad Co. v. Driscoll, (Col.) 21 Pac. 708; Kelley v. Cable Co. (Mont.) 14 Pac. 633; N. P. R. Co. v. O'Brien, (Wash.) 21 Pac. 32; Railroad Co. v. Hawk, (Ill.) 12 N. E. 253; Railroad Co. v. Fox, (Kan.) 3 Pac. 320; Harrison v. Railroad Co., (Mich.) 44 N. W. 1034; Railroad Co., v. Smith (Neb.) 36 N. W. 285; Criswell v. Railroad Co., 30 W. Va. 798, s. c. 33 Amer. & Eng. R. Cases 232; Stephens v. Railroad Co., 86 Mo. 221, s. c. 28 A. & E. R. Cases 538; Railroad Co. v. Collins, 2 Duv. (Ky.) 113, s. c. 87 Amer Dec. 486; Railroad Co. v. Jones, 9 Heisk, (Tenn.) 27; Patton v. Railroad Co., (N. Car.) 31 A. & E. R. Cases 298; Mann v. Orient Print Works, 11 R. I. 152; Couch v. Railroad Co., 22 S. C. 557, s. c. 28 A. & E. R. Cases 331; Ayres v. Ry. Co., (Va.) 33 A. & E. R. Cases 269; Darrigan v. Railroad Co., 52 Conn. 285; Van Amburg v. Railroad Co., 37 La. 650; Railroad Co. v. Williams, (Va.) 9 S. E. 990; Baldwin v. Railroad Co., 63 Iowa, 210, s. c. 39 N. W. 507; Atlanta Cotton Factory Co. v. Speer 69 Ga. 137, s. c. 47 Amer. Rep. 750; Reddon v. U. P. R. Co., (Utah) 15 Pac. 262; Hobson v. Railroad Co., (New Mex.) 28 A. & E. R. R. Cases 360

These authorities adopt the limitation without reserve and without qualification as to the specific act of negligence, viz., whether the negligence grows out of a duty which the master owes to the servant or not; and hold that the negligence of a superior servant whatever it be is the negligence of the master.

In some states where the superior servant limitation is denied it is conceded that where a foreman has the power of employing, directing and discharging men under him, that he is a vice principal.

Mr. McKinney in his work on Fellow Servants, § 64, claims Texas as one of the states which "discountenances the limitation;" and while that may be true, it is held in Missouri Pac. R. Co. v. Williams, (Texas) 12 S. W. 835: "A servant who has the authority to employ other servants, under his immediate super-

vision, exercises an important function of his master, and has as full control over them as the master would have were he present acting in person. The subordinate, in such case, is as much the servant of the agent who employs and controls him as he would be of the master, were the latter discharging the functions of the agent. It seems, therefore, that there is as much reason for holding that a servant assumes the risk of the master's negligence as for holding that he assumes the risk of the negligence of such a superior employe of his master. He may be presumed to exercise an influence over a co-employe who did not employ and has no power to discharge him, calculated to promote care and vigilance on the part of the latter, which he cannot or dare not exercise towards one who has the right to terminate his employment." And to the same effect see Patton v. Railroad, 31 Amer. & Eng. R. Cases 303.

The learned editor of the American and English Railroad Cases says, in his note to Chicago, Milwaukee & St. P. R. Co. v. Ross, 17 Amer. & Eng. R. Cases 514: "It is, we believe, true that in every case where the power to employ and discharge exists, the relation established has been held to be not that of a fellow servant, but of vice principal." See list of cases cited in same note, and notes in Vol. 17, Amer. & Eng. R. Cases p. 560 and 563; Railroad Co. v. Sullivan, 41 A. & E. R. Cases 463.

This superior servant limitation must be correct in some cases, or a corporation would escape liability altogether. Many courts have therefore qualified the doctrine to the extent of holding that the master is only liable when the superior servant violates some duty which the master owes to the inferior servant. It is the duty of the master to furnish a reasonably safe place to work, and safe and proper tools. It is the duty of the master to maintain such, and his duty of caring for the safety of his men is continuing, and never ceases while they are in his employ.

Counsel for appellant first seeks to escape the rule of the master's liability for the negligence of a superior servant, resulting in injury to an inferior acting in obedience to the order of the superior, and next he contends that a specific act of negligence charged, viz., the omission of Withnell to block the out-

side pile, was not a duty which the railroad company owed to Ell. Possibly not, if every other act of negligence be eliminated from the case. But the case does not rest on that act alone. It was clearly the duty of Withnell, having charge of a crew of men performing a dangerous work in a dangerous place, to provide for their safety. This was an obligation of the company which it had delegated to him. He knew the log was not blocked. His attention was called to the fact before Ell was hurt. It is conceded that the log should have been blocked by some one. Ell testified, "it was the business of the foreman to block it."

In Moore v. Railroad Co. 21 A. & E. R. R. Cases 512, the supreme court of Missouri say: "It was the duty, a contractual obligation of the company, to provide for the safety of the men at work in repairing the car. The company devolved that duty upon the person who represented it in conducting, ordering and managing the work, and the men engaged in it." The foreman of a crew of car repairers sent one of them to repair a car and neglected to set out signal flags. He failed to provide for the safety of his subordinate and although he was supplied with signal flags his negligence in failing to use them is held to be the negligence of the company. See Railroad Co. v. Lavalley, 5 A. & E. R. Cases 549; Abel v. Railroad Co. 28 A. & E. R. Cases 497 (N. Y.) In Bergmann v. Railroad Co. 41 Fed. 671, Judge Shiras says: "Where a given operation connected with a railway requires care and oversight for the proper performance thereof, and for that purpose there is placed in charge thereof one clothed with the duty of supervising and managing the given work, having the power of control and direction over those employed in the details of the same, who in turn are expected to obey the orders and instructions of the former, such person, in carrying out the duty of control, supervision and management, represents the company, and for his negligence in the performance thereof the company is responsible."

Withnell's work was one of superintendence; from his position he directed the movements of his men. If he knew, or by the use of diligence might have known of the existence of danger to those engaged in the work, it was his bounden duty to

convey such information to them.   Kelly v. Cable Co. (Mont.) 14 Pac. 633.   The foreman of a yard who has charge of receiving and piling lumber, in the performance of his duty of maintaining an inspection of the piles in reference to their security against falling upon those employed near them, is not a "mere foreman" or co-laborer, but in the performance of such duty is a superior or vice principal.   Baldwin v. Railroad Co. (Iowa) 25 N. W. 918.

This case appears again in 39 N. W. 507, where the court say: "We think the evidence tends to show negligence on the part of the person having charge of the piling of the timber and its care which caused the injury.   This person had full control of the timber yard, employed and discharged men, and is to be regarded as a vice principal.   He was sometimes absent from the yard, and the care and management of the business and matters were committed to or devolved on another, who took his place and exercised the authority with which he was charged.   This other person is therefore to be regarded as a temporary vice principal in the place of his superior."   A foreman directed one of his men to dig gravel under a high bank, who was injured by the bank falling during such employment.   Prior to that time it was the custom to station a watchman to give a warning, which was omitted on this occasion.   Held they were not fellow servants, and for such negligence the master is liable.   Railroad v. Crockett, (Neb.) 26 N. W. 921.   Ell was working in a dangerous place by reason of the orders and direction of his foreman.   It was not a mere careless act done by the foreman in performing his work as a co-laborer or fellow-servant, but it was a negligent and unskillful exercise of authority over the men in his charge, which caused the injury complained of.   Chicago & Alton R. R. Co. v. May (Ill.) 15 Amer. & Eng. R. R. cases 320; Heckman v. Mackey, 35 Fed. 353; Brown v. Sennett (Cal.) 9 Pac. 74.

The Minnesota case of Lindvall v. Woods, 42 N. W. 1020, is cited by appellant's counsel as sustaining his position; but upon examination it appears that the negligent act was not one of supervision, but a part of the work being performed by the men themselves, "The bents of the trestle were not properly braced."

It does not appear that the boss was present or that he had notice of the danger. The pieces for the trestle were furnished on the ground. All that remained was to put them together in place. The inference is, from the meagre statement of the case, that the boss was at another place on the work and knew nothing of the matter at the time. If he had personally stood by, overseeing the operation and having seen the danger carelessly omitted to warn his men then another and different question would have arisen.

In the Wisconsin case of Johnson v. Ashland Water Co. 45 N. W. 807, it is found that the foreman was personally engaged in the work himself, his crew consisting of himself in this instance, until he called Johnson to his assistance, who it was claimed was not a servant of the company. It does not appear that the foreman hired him or had authority to discharge him or even to direct him. It does not appear that Johnson was working in an elevated place on a narrow plank, nor that the foreman knew of his danger and having opportunity neglected to warn him.

CORLISS, C. J. This litigation has its origin in an injury sustained by plaintiff while in the employ of the defendant. He, with several others, was engaged in removing long piles from a platform car to bents on the north side of the defendant's track. These bents were heavy timbers resting on piles driven in the ground, and running at right angles with the track, and the ends nearest to the track were about five feet therefrom. They were the same height as the platform of the car. At the time the accident occurred they were covered over with piles to within two feet from the ends nearest to the track. The piles were rolled from the car to the bents over two round skids about eight inches in diameter, one end of each of which rested upon a pile on the car, and the other upon the pile on the bents which was nearest to the track. Both ends of the skids were on the same level. Reaching from the platform of the car to the ends of the bents were boards a foot wide, over which the men passed from the car to the bents in rolling the piles along over the skids to the bents. In transferring the

piles from the car, some of the men rolled them with their hands, and others used cant-hooks in the work. One of the piles which was being removed from the car rolled from the ends of the skids into the space between the pile on the bents nearest to the track and the next pile, and pushed the former pile towards the plaintiff, and upon his leg, breaking the same near the ankle. One of the grounds upon which plaintiff based and seeks to sustain his recovery was the alleged negligence of the foreman of the gang at work in failing to block this pile so as to prevent its being shoved towards the plaintiff. That the pile was not blocked at the end where plaintiff was working appears to be undisputed. There was evidence to show that the foreman was notified of this fact before the accident. While he denies this, yet there was sufficient evidence to warrant a jury in finding the fact against his testimony. We are clear that the jury were authorized, under the evidence, to find that plaintiff was injured by reason of the negligence of the foreman, Withnell, in failing to block the pile. Will the law hold the defendant responsible for this negligence? Against such liability, defendant invokes the fellow-servant rule, and our statute embodying it. To escape the force of this rule, plaintiff contends that the case is brought within the scope of the fellow-servant rule, and that such limitation has the voice of weightier authority, of better reason, and of more numerous precedents in its behalf. This issue of law we are to determine, and our investigation must run along the line of general principles; for the adjudications upon this subject—so multitudinous as almost to warrant the simile, "thick as autumnal leaves that strew the brooks in Vallambrosa"—these adjudications are so discordant, enumerating so many rules, stating so many limitations, applying the law to facts so diverse, that one is reminded of Gibbon's remark upon the infinite variety of laws and opinions when Justinian entered upon the reform of codification—that they were beyond the power of any capacity to digest. We are compelled to decide whether this superior-servant limitation shall be adopted in this state. The trial court declared it to be the law in his charge to the jury, and refused to charge against the adoption of the doc-

trine, although requested to so charge by defendant's counsel. Whatever other ground of liability there may have been, the verdict cannot stand if the trial judge erred in this respect, for the verdict may rest entirely upon the ground work of such instruction.

The foreman, Withnell, through whose negligence it is insisted that plaintiff was injured, had control of the gang employed on the work, and was vested with authority to employ and discharge the men, who were subject to his direction and supervision. Hence it is urged that he was in his position, and therefore, in the prosecution of the work of unloading these piles, a vice-principal, and not a fellow-servant. In this connection the authorities are cited which sustain the doctrine that the station of the employe, and not the character of the act, determines the question whether the master is responsible. In many of the cases where the superior-servant limitation was applied, such servant was in fact the fellow-servant of the employe injured. But, because of some superior position occupied by him with respect to the servant injured, the master was, by a legal fiction, regarded as personally present in the person of the superior-servant, and made responsible to one servant for the manner in which another servant performed the duties and labors pertaining to a servant's employment. Here lies the difference between the two rules. Those cases which preserve the fellow-servant rule in its full integrity bring the facts of each case to the test, not of the rank of the negligent servant, but of the character of the negligence from which damage results. Did the master owe to his servant a duty as. master? Answer the inquiry in the affirmative, and he cannot escape a careless discharge of that duty by shifting the burden to the shoulders of a servant, however inferior his position may be. The negligence of a fellow-servant has not wrought injury in such a case. It is the negligence of the master himself, because that was carelessly done which he was bound to have carefully performed. The master must use due care in supplying his servants with safe appliances, and in providing them a safe place in which to work. These are duties of the master. They are none the less his duties because from the necessities of bus-

iness, or for other reasons, he confides their discharge to an employe. His personal negligence in this respect would create liability. He cannot gain exemption from negligence of another in this regard by delegating these personal duties to another. This doctrine is sound, and it in no manner is a limitation of the fellow-servant rule. On the other hand, the other doctrine is a limitation—a very important limitation—of that rule. It finds no warrant in the cases which first enunciated that rule. It rests on no subsequent legislation; and we are firm in the conviction that the mere superiority in the rank of the negligent servant—his right to control the servant injured, and to employ and to discharge him—calls for no modification of the fellow-servant rule. The bed-rock of that doctrine is that every employe assumes the risk of his co-employe's negligence as one of the ordinary risks of his work. Is a superintendent or foreman so much more careless in the performance of work pertaining to a servant's duties than a subordinate employe that the risk of the former's negligence is an extraordinary one? If work belonging to the duties of a servant be done carelessly, what conceivable difference is there whether the negligence proceed from a commander or a subaltern, so long as the master himself is not personally at fault. The superior-servant is in fact a fellow-servant. The two are engaged in the same general work for the master; one using his muscle chiefly, and the other perhaps working mainly with his brain. The only ground on which the superior's relation as fellow-servant is ignored is the constructive presence in his person of the master, because the master in the distribution of labor has appointed him to work in the line of superintendence and control. But this control, this superior rank, cannot lift him above the grade of a fellow-servant into the position of a vice-principal so long as he is engaged in the work of a servant only. If a servant of inferior rank should perform the same work, he would not be regarded as the master; and we are at a loss to understand how the higher rank of the servant can change the nature of the act, or increase the risk of the inferior servant, so as to render inapplicable the fellow-servant rule. The superior-servant is no more the representative of the mas-

ter than the inferior servant, except in the enlarged field of his action, and the wider scope of the trusts confided to him. They are both laboring for a common master in the same general business; both ultimately accountable to him; and employed, controlled, and discharged by him, either personally, or by some one selected by him for that purpose. The ultimate power to employ, control, and discharge is in his hands.

The reason for the fellow-servant rule applies with full force to the work of a servant, whatever the rank of the servant who performs it. It would be an anomalous condition of the law if the negligence of one servant was within the ordinary risks of the employment, while the negligence of another, no more prone to carelessness, should be without the domain of such risks merely because he had been set in a higher place of service by reason of superior skill or ability. Judge Cooley says: "In some quarters a strong disposition has been manifested to hold the rule not applicable to the case of a servant who at the time of the injury was under the general direction and control of another, who was intrusted with the duties of a higher grade, and from whose negligence the injury resulted. But it cannot be disputed that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of a servant of any other; and it seems impossible, therefore, to hold that the servant contracts to run the risks of negligent acts and omissions on the part of one class of servants, and not those of another class. Nor, on grounds of public policy, could this distinction be admitted, whether we consider the consequences to the parties to the relation exclusively, or those which affect the public, who, in their dealings with the employer, may be subjected to risks. Sound policy seems to require that the law should make it for the interest of the servant that he should take care not only that he be not negligent himself, but also that any negligence of others in the same employment be properly guarded against by him so far as he may find it reasonably practicable, and be reported to his employer, if needful. And in this regard it can make little difference what is the grade of the servant who is found to be negligent, except as superior authority may render the negligence

more dangerous, and consequently increase at least the moral responsibility of any other servant who, being aware of the negligence, should fail to report it." Cooley, Torts, 543. Judge Dillon is equally emphatic against the limitation. He says: "The master owes certain defined, personal, unalienable, non-assignable duties towards servants. These duties may be devolved on others by the master, but not without recourse on him.     *     *     *     In the general American law, as I un-. derstand it, the doctrine of vice-principal exists to this extent, and no further, viz. :  That it is precisely commensurate with the master's personal duties towards his servants.  As to these, the servant who represents the master is what we may call for convenience a 'vice-principal,' for whose acts and neglects the master is liable.  Beyond this the master is liable only for his own personal negligence.  This is a plain, sound, safe, and practicable line of distinction.  We know where to find it, and how to define it.  It begins and ends with the personal duties. of the master.  Any attempt to refine, based upon the notion of 'grades' in the service, or, what is much the same thing, distinct 'departments' in the service, (which 'departments' frequently exist only in the imagiantion of the judges, and not in fact,) will. breed the confusion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the judges that made it seem to be able to 'find no end; in wandering mazes lost.'  *  *  *  The real inquiry is, was the injury caused by another servant one of the ordinary risks of the particular employment?  If so, the grade, whether higher, lower, co-ordinate, or the department of the faulty servant, is of no consequence.  It is a condition of the contract of service that the servant takes upon himself the risk of accidents in the common course of the business, all open and palpable risks, including the negligence of all fellow-servants of whatever grade in the same employment."  24 Amer. Law Rev. 175.  The superior-servant doctrine unfairly discriminates against masters whose business is of such nature that grades of service are indispensible.  This case will furnish an illustration of the truth of this statement.  The work with respect to which Withnell, the foreman, was careless—the blocking of the pile—was the work of a

servant.  Had the same accident occurred in the employ of a master whose servants were all of the same rank, no claim of liability would be thought of.   The proprietor of a factory, of a machine-shop, of a mill, of any business in which gradations of service are not absolutely essential, is present in the persons of his servants only so far as his personal duties to his employes are concerned.   But the railroad master, though Argus-eyed to discern, and Briarean to prevent, the negligence of its horde of vice-principals—conductors, as in the Ross case, 112 U. S. Rep. 377, 5 Sup. Ct. Rep. 184, superintendents, section bosses, foremen of various gangs, and many others—would find itself impotent to save itself from enormous responsibility not incurred by many other masters, notwithstanding its utmost caution in the selection of its employes.   According to this doctrine the master that has fully discharged all its or his personal duties may be guilty at the same time in as many different places of a score of negligent acts by construction of law, although they are acts pertaining to the duties of a mere servant, performed by one who is in fact a servant, and whose carelessness in this regard can as fairly be said to be within the risks incurred by the injured servant as the carelessness of an employe of lower rank.   If there is anything in the reason for the fellow-servant rule, it applies with even stronger force to a class of servants whose higher position is a guaranty of better skill and intelligence, and consequently of the exercise of greater care.   Their enlarged responsibility to the master will tend to make them more cautious.   Their compensation is frequently so large as to make the retention of their positions very desirable to them.  This will augment their caution; for negligent performance of duty would be almost certain to result in their dismissal.  There is nothing in the controlling power of the superior servant that warrants any difference in the law; for it cannot be said, as is frequently asserted in cases, that any employe is justified in submitting to the carelessness of a superior from fear of being discharged; and the fact is that it is seldom in the power of the injured servant to anticipate or guard against the careless act of the fellow-servant causing injury to him.  If he could and did, the accident would not happen.  If he could and did not, he

would be himself negligent, and his recovery would be defeated. In either case there would be no occasion for the fellow-servant rule. The basis of the fellow-servant doctrine is not that the servant can, as a rule, be on his guard against his co-servants' carelessness, but that he takes the risk of such negligence when he makes his contract of employment. It is said that a servant can exert an influence for care upon a fellow-servant of the same grade that he could not exert upon a superior-servant by whom he had been employed and could be discharged, and therefore in the latter case the master is responsible. If this affects the question, then the master should have been held liable, in many cases, where the injured servant could not possibly have exerted any such influence upon the negligent servant.

The books are full of such cases, in none of which was the master adjudged responsible. The courts have held that the rule is "not confined to the case of two servants working in company, or having opportunity to control or influence the conduct of each other, but extends to every case in which the two, deriving their authority and their compensation from the same source, are engaged in the same business, though in different departments of duty." Holden v. Railroad Co. 129 Mass. 268. Many of the cases holding the master exempt from liability under the fellow-servant rule were, as we have said, cases in which the injured servant could not possibly have exerted influence over the negligent servant. Their separate departments of service, or their usual stations of employment, kept them as a rule, entirely aloof from each other. In the following cases the relation of fellow-servant was held to exist between persons who could exert little, if any, influence over each other. Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. Rep. 397—the carpenter, the porter, and stewardess of a steamship; Railway Co. v. Welch, 72 Tex. 298, 10 S. W. Rep. 529—foreman of a bridge gang, and servants operating train; Elliott v. Railroad Co., 5 Dak. 523, 41 N. W. Rep. 758—a section foreman and a conductor; Fagundes v. Railroad Co., 79 Cal. 97, 21 Pac. Rep. 437—a laborer employed to remove snow from track and a conductor; Baughman v. Superior Court, 72 Cal. 573, 14 Pac. Rep. 207—a conductor and brakeman; Randall v. Railroad Co., 109 U. S. 478,

3 Sup. Ct. Rep. 322—a brakeman and conductor of different trains; Van Wickle v. Railway Co., 32 Fed. Rep. 278--a track repairer and an engineer; McMasters v. Railroad Co., (Miss.) 4 South. Rep. 59—brakeman of one train and employe on another; Naylor v. Railroad Co., 33 Fed. Rep. 801—engineer and switchman; Van Avery v. Railroad Co., 35 Fed. Rep. 40—engineers of different trains; Connelley v. Railroad Co., (Minn.) 35 N. W. Rep. 582—a sectionman and an engineer or brakeman; Howard v. Railroad Co., 26 Fed. Rep. 837—an engineer and fireman of different trains; Railroad Co. v. Rider, 62 Tex. 267; Gormley v. Railroad Co., 72 Ind. 31; Collins v. Railroad Co., 30 Minn. 31, 14 N. W. Rep. 60; Clifford v. Railroad Co., 141 Mass. 564, 6 N. E. Rep. 751; Keyes v. Railroad Co., (Pa) 3 Atl. Rep. 15; Whaalan v. Railroad Co., 8 Ohio St. 249—in each case an engineer and a sectionman. Without stating the relation of the injured to the negligent servant in each of the following cases, they are referred to as being in the same line: Holden v. Railroad Co., 129 Mass. 268; Valtez v. Railroad Co., 85 Ill. 500; Besel v. Railroad Co., 70 N. Y. 171; Brown v. Railroad Co., (Cal.) 7 Pac. Rep. 447; Roberts v. Railroad Co., 33 Minn. 218, 22 N. W. Rep. 389; Brown v. Railroad Co., 31 Minn. 553, 18 N. W. Rep. 834; Cooper v. Railroad Co., 23 Wis. 668; Heine v. Railroad Co., 58 Wis. 525, 17 N. W. Rep. 420; Capper v. Railroad Co., 103 Ind. 305, 2 N. E. Rep. 749; Henry v. Railroad Co., 81 N. Y. 373; Blake v. Railroad Co., 70 Me. 60; Harvey v. Railroad Co., 88 N. Y. 481. The list might be greatly enlarged.

Going back to the fountain, we find this idea of exertion of influence by the injured servant as the basis of the servant rule distinctly repudiated. In the Farwell case, 4 Metc. (Mass.) 60, Chief Justice Shaw says: "It was strongly pressed in the argument that although this might be so where two or more servants are employed in the same department of duty, where each can exert some influence on the conduct of the other, and thus to some extent provide for his security, yet that it could not apply where two or more are employed in different departments of duty at a distance from each other, and where one can in no degree influence or control the conduct of the other. But we think this is founded upon a supposed distinction on which

it would be extremely difficult to establish a practical rule. * * * When the object to be accomplished is one and the same, when the employers are the same, and the several persons employed derive their authority and their compensation from the same source, it would be extremely difficult to distinguish what constitutes one department, and what a distinct department, of duty. It would vary with the circumstances of every case. If it were made to depend upon the nearness or distance of the persons from each other, the question would immediately arise, how near or how distant must they be to be the same or different departments? Besides, it appears to us that the argument rests up an assumed principle of responsibility which does not exist. The master in the case supposed is not exempt from liability because the servant has better means of providing for his safety when he is employed in immediate connection with those from whose negligence he might suffer, but because the implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself; * * * and he is not liable in tort as for the negligence of his servant because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied. The exemption of the master, therefore, from liability for the negligence of a fellow-servant does not depend exclusively upon the consideration that the servant has better means to provide for his own safety, but upon other grounds. Hence the separation of the employment into different departments cannot create that liability where it does not arise from express or implied contract, or from a responsibility created by law to third persons and strangers for the negligence of a servant." It is thus apparent that there is nothing in the fact that an inferior servant may not be able to exert any influence for safety over his superior to justify the refusal to apply the fellow-servant rule. On principle, we are opposed to the doctrine of the Ross case, 112 U. S. 377, 5 Sup. Ct. Rep. 184. We believe that the true rule was stated and applied in Crispin v. Babbitt, 81 N. Y. 516: "The liability of the master does not depend upon the grade or rank of the employe whose negligence causes the

injury. A superintendent of a factory, although having power to employ men or represent the master in other respects, is in the management of the machinery a fellow-servant of the other operatives. * * * The liability is thus made to depend upon the character of the act in the performance of which the injury arises, without regard to the rank of the employe performing it. If it is one pertaining to the duty that the master owes to his servants he is responsible to them for the manner of its performance. The converse of the proposition necessarily follows: If the act is one which pertains to the duty of an operative, the employe performing it is a mere servant; and the master, although liable to strangers, is not liable to a fellow-servant for its improper performance." To same effect are Lindvall v. Woods, (Minn.) 42 N. W. Rep. 1020; Davis v. Railroad Co., 55 Vt. 84; State v. Malstar, 57 Md. 287; Car Co. v. Parker, 100 Ind. 191; Hussey v. Coger, 112 N. Y. 614, 20 N. E. Rep. 556; Copper v. Railroad Co., (Ind.) 2 N. E. Rep. 749; Yates v. Iron Co., (Md.) 16 Atl. Rep. 280; Elevator Co. v. Neal, 65 Md. 438. 5 Atl. Rep. 338; McGovern v. Manufacturing Co., (Ga.) 5 S. E. Rep. 492; Lewis v. Seifert, (Pa.) 11 Atl. Rep. 514; Olson v. Railroad Co., (Minn.) 35 N. W. Rep. 866; Anderson v. Winston, 31 Fed. Rep. 528; Webb v. Railroad Co., (N. C.) 2 S. E. Rep. 440.

This list might be added to, but we are concerned not so much about the number of cases to be cited in support of our views as about the soundness of our position upon principle. We believe that the fellow-servant rule should hedge about all masters without discrimination; that its wise and just barrier against liability should not be broken down by a fiction; that those whose business, from its very nature, necessitates gradations of service should not be deprived of its protection on account of a distiction which in no manner affects the considerations which gave it birth, and have led to its almost universal adoption. We see nothing to justify the limitation doctrine, except the increased safety of employes in a dangerous business; and this applies, if at all, equally to cases where the two servants are of the same grade. But, so far from augmenting their safety, the liability of the master will have the contrary effect, if it produces any effect at all. That servant will grow more careless, who in-

stead of being exclusively liable for his own negligence, finds that beyond him is another liability, so much more desirable to the injured servant that the careless servant is invariably lost sight of—the liability of the corporation, against which the verdict is more easily secured, and, when obtained, is certain of payment.

We have assumed that our statutes on this question (§ 3753 Comp. Laws) are only declaratory of the common law. But we do not decide whether they limit the liability of a master. They certainly impose upon him no greater responsibility than the common law, and, as the question of their restrictive force has not been discussed, we do not decide it. See Herbert v. Railroad Co., 3 Dak. 38, 13 N. W. Rep. 349, on appeal 116 U. S. 642 6 Sup. Ct. Rep. 590, and dissenting opinion. We are clear that the trial court erred in refusing to charge the jury that the negligence of Withnell in failing to block the pile was the negligence of a fellow-servant, and in instructing them that it was not; and for this error the judgment of the district court is reversed. There are other questions in the case, on which we refrain from expressing any opinion, as the evidence on a new trial may be materially different. This does not apply to the question of interest, and we therefore hold that the trial court erred in charging the jury to give the plaintiff interest on his recovery, without submitting it to their discretion. "In an action for the breach of an obligation not rising from contract, * * * interest may be given in the discretion of the jury." § 4578, Comp. Laws. Judgment reversed, and new trial ordered. All concur.