GUISEPPE SAVINO v. GRIFFIN WHEEL COMPANY.[1]

June 21, 1912.

Nos. 17,626—(161).

**Question for jury.**
The question whether defendant in the conduct of its business was charge-

[1] Reported in 136 N. W. 876.

[Note] Liability of master for injury to employee caused by defective elevator and negligence of fellow servant, see note in 2 L.R.A.(N.S.) 647.

able with negligence in not adopting a suitable and safe system for the operation of an elevator, used in its factory building for carrying material from the ground floor to the floors above, was, on the evidence, a question of fact, and the verdict is sustained.

**Case followed.**

Mattson v. Minnesota & N. W. R. Co. 98 Minn. 296, criticising and disapproving the practice of reading as a part of the charge to the jury the pleadings in the case, followed; but *held*, that no prejudice resulted to defendant therefrom.

Action in the district court for Ramsey county by the administrator of the estate of Orando Savino, deceased, to recover $5,000 for the death of his intestate. The substance of the pleadings is given on page 292, infra. The case was tried before Kelly, J., and a jury which returned a verdict in favor of plaintiff for $2,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*How, Butler & Mitchell,* for appellant.

*James E. Markham* and *Benjamin Calmenson,* for respondent.

BROWN, J.

Action for the death of plaintiff's intestate, caused, as alleged in the complaint, by the negligence of defendant. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

The facts, briefly stated, are as follows: Defendant is a corporation, and engaged in the operation of an iron foundry in the city of St. Paul, manufacturing railway car wheels and other articles of iron manufacture. It maintained in its factory an elevator for the purpose of taking material used in its business from the ground floor of the factory to the floors above. For this purpose small cars were loaded on the ground floor with articles to be elevated to the floors above, and then pushed by hand over a track provided for the purpose into the elevator shaft, and thence elevated to the desired point above. The elevator shaft was of the usual and ordinary variety, inclosed on all sides, save the side of entrance, and the machinery was operated by means of electricity. The operator was stationed up-

on the second floor of the factory, and when, by looking down the shaft, either over gates at the entrance, or through a window opening at one side of the same, he found that a push car had been placed upon the elevator floor, would, by manipulating the ropes controlling its movements, raise the elevator to the second floor, where the car would be removed and the elevator returned to the ground floor.

Decedent was in the employ of defendant as a common laborer, and had been such for a few days preceding his death. His duties were to assist other employees in loading the small cars with material and pushing them upon the elevator floor ready for raising by the operator. The employees doing this work did not go with the loaded car to the floor above; but men stationed on that floor removed the car, unloaded it, and then returned it to the ground floor. At the time of decedent's death, he had, with the other men, placed a car upon the elevator; but before he had left the same the operator started the machinery in motion, and decedent was caught by the descending door of the elevator, which lowered automatically with the ascending elevator, and crushed to death.

The accident and death of decedent is alleged in the complaint to have been caused by the negligent failure of defendant to adopt a reasonable, safe, and suitable system for the operation of the elevator, the failure to provide a reasonably safe place in which decedent was required to perform his work, and negligence in other respects, in consequence of which decedent was, owing to his inexperience in the particular employment, exposed to dangers of which he was not aware, and of which defendant failed and neglected to warn him. Defendant interposed by answer a denial of the allegations of the complaint and charged contributory negligence on the part of decedent.

It is contended on this appeal (1) that the evidence fails to support the charge of negligence; (2) that, if any negligence was shown, it was that of a fellow servant; and (3) that a new trial should have been granted for the error of the court below in reading to the jury a portion of the allegations of the complaint.

1. Our examination of the record leads to the conclusion that the question whether defendant was negligent in respect to its alleged

failure to provide a reasonably safe method and system for the operation of the elevator, resulting in the failure to provide decedent with a reasonably safe place in which to do his work, and the further question whether this, or the negligent act of the operator of the elevator, a fellow servant, in starting the same in motion before decedent had got out of the same after placing a push car therein, was the proximate cause of the injury and death of decedent, were issues of fact, and properly submitted to the jury.

As heretofore stated, the shaft in which the elevator was operated was of the ordinary variety, entirely inclosed, except the front or entrance, and a small opening for a window upon one side at the second floor. The elevator was operated by an employee stationed upon that floor. He did not ride up and down with it. When he learned by looking down the shaft that a car had been placed in position, he would raise the elevator of his own motion. No system of signals was adopted, either by bells to inform the operator when to raise the elevator, or otherwise, and the operation was controlled entirely by the result of the observations made by looking down the shaft. It was a fair question for the jury whether the operator could determine in this manner whether the men placing the car upon the elevator floor had all left the inclosure, and whether this method of operating the same was reasonably safe and suitable, having in view the safety of those engaged at the ground floor.

It appears that the elevator could have been operated in the usual manner, namely, by the operator riding with it, thus placing him in a position to determine beyond question whether the employees there at work were out of danger before starting it upward. It also appears that signals by bell or otherwise could readily have been devised, by means of which the operator could have been informed when to move the elevator, thus avoiding the uncertainty naturally arising from being required to determine the fact by looking down the shaft, with no opportunity or manner of communicating with the men there at work. It is obvious that the men below were exposed to unnecessary dangers and risks, which a proper system for the conduct of the business would have avoided. It was a fair question, therefore, for the jury. 26 Cyc. 1154. Polaski v. Pittsburgh, 134 Wis. 259, 114

N. W. 437, 14 L.R.A.(N.S.) 952. See also authorities cited in note to Nolan v. New York (70 Conn. 159), 43 L.R.A. 305.

2. The trial court during its instructions read to the jury the allegations of negligence as contained in the complaint. Exception was taken to this, and the action of the court in this respect is urged as a ground for a new trial. The practice of the trial judges in reading the pleadings to the jury as a part of their instructions was criticised and disapproved in Mattson v. Minnesota & N. W. R. Co. 98 Minn. 296, 108 N. W. 517, and again in Korby v. Chesser, 98 Minn. 509, 108 N. W. 520. We take occasion to again disapprove of the practice. As suggested in the opinions in those cases, the pleadings often contain irrelevant and immaterial allegations, and others, though material and pertinent, which find no support in the evidence. By reading these matters to them, the jurors are likely to be confused, if not prejudiced, and the practice should be abandoned. However, we discover no sufficient basis for the claim that prejudice resulted to defendant in this instance, and hold, therefore, that the error of the court in so reading the complaint to the jury is not ground for a new trial.

Order affirmed.