# WYLDES, by McLaughlin, Guardian *ad Litem* v. PATTERSON.

## (139 N. W. 577.)

**Master and servant — servant's injuries — elevators — duty to provide signals question for jury.**

1. Where, while in course of construction, material is raised to and lowered from the top of the roof of a building 70 feet high, by a temporary elevator, upon and from which an employee working upon said roof is required to place and remove, empty and fill wheel barrows and such elevator is raised and lowered by means of a drum and pulleys, operated by a steam engine placed in the street, it is for the jury to say whether, under the circumstances of the case, a system of signals was necessary to be provided by the employer in order to render the plan of operation reasonably safe.

**Master and servant — servant's injuries — negligence — risk — question for jury.**

2. If, in such cases, a system of signals is provided, such system should be communicated to and be required to be enforced by all of the employees interested. When, therefore, the evidence showed that the engineer who operated the engine which lowered and raised the elevator relied upon a system of signals which the foreman in control of the plaintiff had, a short time prior to the accident, ordered discontinued, and that the plaintiff himself was led to believe that such system was not in operation, it cannot be said, as a matter of law, either that the employer had discharged his duty in that behalf, or that such employee, who is injured by a sudden lowering of the elevator, had assumed the risk of such confusion of method. So, too, the adequacy and reasonable sufficiency of the system of signals provided, if system there was, was for the jury, and not for the court, to pass upon.

**Pleading — sufficiency — verdict.**

3. Pleadings examined, and *held* to be sufficient to support a verdict under the particular facts of the case, if the evidence of the plaintiff is believed by the jury.

---

Note.—The authorities on the master's duty to warn or instruct servants, generally, are reviewed in an elaborate note in 44 L.R.A. 33. And particularly, as to the master's duty to instruct servant as to danger to which he is exposed, see note in 41 L.R.A. 143. And for a note on the duty to protect or warn against dangers not reasonably to be apprehended, see 21 L.R.A. (N.S.) 89.

On the question whether a servant may assume the risk of dangers created by the master's negligence, see notes in 4 L.R.A. (N.S.) 848, and 28 L.R.A. (N.S.) 1215.

**Trial — direction of verdict — error.**

    4. It is error to direct a verdict where the evidence on which such direction is asked and based is disputed by the physical facts of the case.

Opinion filed December 28, 1912.

Appeal from the District Court for Burleigh County, *Winchester,* J. Action for damages sustained by reason of personal injuries received by plaintiff while in the employ of defendant. From a directed verdict for defendant, plaintiff appeals.

Reversed.

Statement by BRUCE, J. Plaintiff, a minor about nineteen years of age, brings this action through his guardian to recover damages for personal injuries received by him while in defendant's employment as a common laborer engaged in and about the construction of a seven-story hotel building in the city of Bismarck. The accident occurred during the time the roof of such building was in course of construction. Plaintiff at such time being in the act of placing a wheelbarrow on a temporary freight elevator which had been erected in the street some 4 feet out from the east wall of the building at the base, and a foot or a foot and a half from the cornice work at the summit of the building, for the purpose of permitting it to be lowered to the ground to be re-filled with roofing material. While in the act of placing such wheelbarrow on the elevator lift, such elevator lift was suddenly and without warning lowered, and plaintiff in some manner was thrown or drawn onto such elevator lift, and the force of the fall, or the sudden stoppage of the elevator by the engineer after such fall, caused the wire cable to part, and he was precipitated to the ground, receiving the injuries complained of.

The complaint alleges that defendant was guilty of the following acts of negligence, which proximately caused the injuries: (1) That such elevator and scaffold were improperly erected and unfit for the purposes for which they were used, in that the cable and fastenings used to operate such elevator were weak and defective, and not of the proper strength and weight for the purposes used; (2) that no appliance was used or supplied to prevent the cage of the elevator from falling in case of the parting of the cable, or the happening of any other con-

tingency by which the cage might become loose or disconnected from the fastenings; (3) that the said elevator cable and fastenings were not properly inspected, repaired, or replaced, but were allowed to become worn, weak, and defective, and out of repair; (4) that the said steam engine used to operate the elevator was so inclosed that the engineer or person operating the same could not see the landing where the elevator stopped; (5) that no electrical or other proper system of signals was provided for said elevator; (6) that the elevator cage was suddenly and without warning lowered from in front of said landing, and the plaintiff, who was then about to roll a wheelbarrow on the said lift, without negligence on his part, was drawn forward onto the said lift with great force and violence. The answer puts in issue the averments of the complaint as to the defendant's negligence, and alleges that the accident was caused solely by plaintiff's own negligence and that of a fellow servant; and also that such accident arose from the dangers and risks incident to such employment, which dangers and risks were knowingly assumed by plaintiff.

At the conclusion of the testimony a verdict was directed against the plaintiff on defendant's motion, and the appeal is from the judgment entered in defendant's favor pursuant thereto.

*Miller & Costello,* for appellant.

It is not necessary to allege specifically that the master failed to instruct, the general allegation of negligence being sufficient. Ingerman v. Moore, 90 Cal. 410, 25 Am. St. Rep. 138, 27 Pac. 306, 13 Am. Neg. Cas. 442; Texas & P. R. Co. v. Brick, 83 Tex. 598, 20 S. W. 511.

It is breach of duty of master to expose an inexperienced servant to danger, even with his consent. Hughes v. Chicago, M. & St. P. R. Co. 79 Wis. 264, 48 N. W. 259.

Capacity of infant to appreciate dangers, if any, of employment, is a question for the jury. Costello v. Judson, 21 Hun, 396; James v. Rapides Lumber Co. 50 La. Ann. 717, 44 L.R.A. 33, 23 So. 469; Brazil Block Coal Co. v. Young, 117 Ind. 525, 20 N. E. 423; Ewing v. Lanark Fuel Co. 65 W. Va. 726, 29 L.R.A.(N.S.) 487, 65 S. E. 200; Mundhenke v. Oregon City Mfg. Co. 47 Or. 127, 1 L.R.A.(N.S.) 278, 81 Pac. 977.

Results of experiments not permitted to be given in evidence unless first shown that conditions are in all respects substantially identical with those existing at the time of the accident. Libby, McNeill & Libby v. Sherman, 146 Ill. 540, 37 Am. St. Rep. 191, 34 N. E. 801; Lake Erie & W. R. Co. v. Mugg, 132 Ind. 168, 31 N. E. 564; Com. v. Piper, 120 Mass. 185; Eidt v. Cutter, 127 Mass. 522; State v. Justus, 11 Or. 178, 50 Am. Rep. 470, 8 Pac. 337, 6 Am. Crim. Rep. 511; Klanowski v. Grand Trunk R. Co. 64 Mich. 279, 31 N. W. 275.

Tendency of such evidence is to mislead jury. Burg v. Chicago, R. I. & P. R. Co. 90 Iowa, 106, 48 Am. St. Rep. 419, 57 N. W. 680; Hurst v. Chicago, R. I. & P. R. Co. 49 Iowa, 76.

Question of negligence of defendant, and contributory negligence of plaintiff, were questions of fact for the jury. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Ingerman v. Moore, 90 Cal. 410, 25 Am. St. Rep. 138, 27 Pac. 306, 13 Am. Neg. Cas. 442.

To charge plaintiff with contributory negligence, the evidence must be clear and the facts undisputed. Field, Damages, p. 519; Beach, Contrib. Neg. § 447.

Duty of master to furnish reasonably safe instrumentalities, and see that they are kept in safe condition; and plaintiff assumed no risks incident to failure of master to furnish safe instrumentalities. Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Cook v. St. Paul, M. & M. R. Co. 34 Minn. 45, 24 N. W. 311, 16 Am. Neg. Cas. 247; Hooper v. Great Northern R. Co. 80 Minn. 400, 83 N. W. 440, 8 Am. Neg. Rep. 453; Perras v. A. Booth & Co. 82 Minn. 191, 84 N. W. 739, 85 N. W. 179, 9 Am. Neg. Rep. 328.

Question of what risks are assumed by minor is one for the jury, and if he has not been instructed as to dangers of his employment, the jury must determine from all the facts whether he has acquired sufficient knowledge of the danger to exempt the employer from liability. Johnson v. Griffiths-Sprague Stevedoring Co. 45 Wash. 278, 8 L.R.A. (N.S.) 432, 88 Pac. 193; Siegel, C. & Co. v. Trcka, 218 Ill. 559,

2 L.R.A.(N.S.) 647, 109 Am. St. Rep. 302, 75 N. E. 1053, 19 Am. Neg. Rep. 166; Roth v. Northern Pacific Lumbering Co. 18 Or. 205, 22 Pac. 842; Bare v. Crane Creek Coal & Coke Co. 61 W. Va. 28, 8 L.R.A.(N.S.) 284, 123 Am. St. Rep. 966, 55·S. E. 907; Mahoney v. Dore, 155 Mass. 513, 30 N. E. 366.

*Cochrane & Bradley* (*P. J. McLaughlin* of counsel), for respondent.

Not the master's duty to warn or instruct, where no amount of warning or instruction will make the danger plainer to the employee than it is made by the use of his own eyes. Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; Beleal v. Northern P. R. Co. 15 N. D. 322, 108 N. W. 33, 20 Am. Neg. Rep. 453; Carlson v. Sioux Falls Water Co. 8 S. D. 47, 65 N. W. 419; Dunn v. Great Lakes Dredge & Dock Co. 161 Mich. 551, 126 N. W. 833; Kraczek v. Falk Co. 142 Wis. 570, 126 N. W. 30; Galloway v. J. W. Turner Improv. Co. 148 Iowa, 93, 126 N. W. 1033; Ward v. Connor, 182 Mass. 170, 64 N. E. 968; Sutton v. Des Moines Bakery Co. 135 Iowa, 390, 112 N. W. 838; Fischer v. Goldie, 132 Mich. 574, 94 N. W. 5.

Experiments made under similar, though not identical, circumstances, are admissible. Burg v. Chicago, R. I. & P. R. Co. 90 Iowa, 117, 48 Am. St. Rep. 419, 57 N. W. 680; Missouri P. R. Co. v. Moffatt, 56 Kan. 673, 44 Pac. 607, 11 Am. Neg. Cas. 554; Eidt v. Cutter, 127 Mass. 524; Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 238, 51 L.R.A. 781, 86 Am. St. Rep. 478, 59 N. E. 657; Krueger v. Brenham Furniture Mfg. Co. 38 Tex. Civ. App. 401, 85 S. W. 1156; Smith v. State, 2 Ohio St. 518; Byers v. Nashville, C. & St. L. R. Co. 94 Tenn. 354, 29 S. W. 128.

BRUCE, J. The rule which excuses a master for the negligence of a coemployee was not recognized at all in the common law prior to the year 1837, or in America prior to 1838. In the parent case of Priestley v. Fowler, 3 Mees. & W. 1, Murph. & H. 305, 1 Jur. 987, 7 L. J. Exch. N. S. 42, 19 Eng. Rul. Cas. 102, the servant of a butcher was injured by the overloading of a butcher's wagon by a fellow servant, and in which he was directed by his master to ride. The case was clearly one in which the servant could reasonably and easily have protected himself, and was evidently decided upon that theory. "The

mere relation of the master and the servant never can imply," says the court, "an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do of himself. He is no doubt bound to provide for the safety of his servant in the course of his employment, to the best of his judgment, information, and belief. The servant is not bound to risk his safety in the service of his master; and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself; and in most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it as the master. In that sort of employment, especially, which is described in the declaration in this case, the plaintiff must have known as well as his master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely. In fact, to allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on behalf of his master, to protect him against the misconduct or negligence of others who serve him, and which diligence and caution, while they protect the master, are a much better security against any injury the servant may sustain by the negligence of others engaged under the same master, than any recourse against his master for damages could possibly afford." This was a case and employment where each servant could watch the other, and each, by controlling the action of the other, could protect himself. It was a case in which the instinct of self-preservation could be made effective for the prevention of accidents. The extension of the rule to persons in a common employment, whether they can control the actions of each other or not, is hardly justified by the decision. When justified, it has only been upon the theory of an implied contract entered into at the time of the employment, and not upon the theory of the opportunity of self-protection. See Farwell v. Boston & W. R. Corp. 4 Met. 49, 38 Am. Dec. 339, 15 Am. Neg. Cas. 407; Ell v. Northern P. R. Co. 1 N. D. 336, 12 L.R.A. 97, 26 Am. St. Rep. 621, 48 N. W. 222.

But even if there is such an implied contract, it is not the only one. The rule that the master shall furnish his servants with reasonably safe premises and appliances with which and on which to work, and that the master himself shall not be negligent, is just as much a part of

the implied contract of employment as is the agreement that the master shall not be liable for the negligence of a fellow servant. It is incumbent upon the master to furnish reasonably safe premises on which to work, and a reasonably safe theory and method of work. In the case at bar it was for the jury to say whether the method of raising brick and other material from the street to the roof by means of the elevator, and which was accompanied by the placing upon and withdrawing from the elevator of wheelbarrows, required a system of signals in order to render it reasonably safe. It was for them, also, to say whether, if a system was shown to have been provided, that that system was reasonably adequate. If, in the opinion of the jury, the signals were reasonably necessary, then the arrangement for the giving of those signals was a matter peculiarly within the control and duty of the employer, and it was incumbent upon him to see that the system, whatever it was, should be generally understood by those who were liable to be affected by it. It was incumbent upon him, even if he could not furnish an absolutely safe elevator system, to, at any rate, see that that elevator was so managed that, if his instructions were carried out, the plan of operation would be as nearly safe as would be reasonably possible. The evidence is undisputed in this case that the plaintiff was acting under the direction of the foreman at the time of the accident, though, of course, we realize that he testified that he would probably have gone on with the work whether directed to by the foreman or not. The evidence is also clear that no definite system of signals was arranged or provided for, or, if there was a system of signals, that that system was not generally known. The witness, Patterson, the employer and owner of the building, and the defendant in this suit, as well as his engineer, Orcott, testified that a system of signals was provided which consisted of raising and lowering the hands. The plaintiff testified that no system of signals was provided for at all. The foreman, who had supervision of the plaintiff, testified that formerly a system of signals had been used, but that for a short time prior to the accident he had ordered their discontinuance. There was other testimony to the effect that the rule was that when the plaintiff stepped back and straightened up, the elevator should be lowered. It is perfectly plain that no three of the men directly interested were agreed upon any given system; and that the foreman and the engineer, the

plaintiff and the engineer, and the plaintiff and the employer, had entirely different views as to what the system was. The engineer positively testified that he acted in response to the "down signal," the signal given by lowering the hands, and that that was the signal which was agreed upon. The plaintiff, on the other hand, was led to believe that no such signals were provided for. We are of the opinion that, under the state of the evidence and the pleadings, it was for the jury, and not for the court, to decide whether the plaintiff was negligent in not providing a proper system of signals, and whether the injury to the plaintiff was the result of such negligence. Savino v. Griffin Wheel Co. 118 Minn. 290, 136 N. W. 876; Hunter v. North Iowa Brick & Tile Co. — Iowa, —, 136 N. W. 515; Polaski v. Pittsburgh Coal Dock Co. 134 Wis. 259, 14 L.R.A.(N.S.) 952, 114 N. W. 437.

Nor do we believe that the doctrine of the assumption of risk could be invoked by the court as a matter of law. What risk, it may be asked, did the plaintiff assume? The risk of "the down signal" being mistaken? The risk attendant upon a system where no signals were to be given at all? The plaintiff certainly did not assume the risk of the employer failing to acquaint all of his employees with the signals or system agreed upon, so that he and the foreman and the engineer had totally different understandings in regard to the matter. The employee is not, under any of the cases, held to assume the risk of a breach of duty which is personal to the employer.

Another reason why the judgment of the trial court should be reversed is that, as we look upon it, the evidence is by no means positive and undisputed that the engineer could have seen the plaintiff far enough back upon the roof to be able to operate the machinery with a reasonable degree of safety, and that the down signal system, or the stepping back and straightening up system, if agreed upon, was, in any way, adequate: The testimony shows that after the cornice was put upon the roof, the elevation of the building was some 70 feet; that the engine house was situated about 20 feet east from the line of the building, and that the cornice extended out 3 feet. The photographs show that the top of the cornice was above the general level of the roof, and that the 10-foot plank on which the plaintiff wheeled his barrow was on an incline. The further back from the edge, therefore, that the plaintiff was, the less clearly could he be seen. A simple application of the

laws of mathematics and of optics will show that, if these distances and measurements are correct, the engineer, if standing in the engine room, could not possibly have seen a man standing about 2 feet from the edge of the roof or cornice, unless such man had been 7 feet, 6 inches tall, and even then could only have seen the top of his head; and, conversely, that a man standing on the roof, and 2 feet back from the edge of the cornice, could not have seen the engineer even if the view had been unobstructed, unless his eyes had been on the top of his head, and he had been 7 feet, 6 inches tall. If the engineer had been 25 feet from the building, the man on the roof, in order to be seen 2 feet back, must have been 6 feet 4 inches tall, and then only the top of his head could have been seen. Practically all of the witnesses for the defendant testified that the plaintiff could have been seen if standing 2 feet back from the edge, from the waist upwards. Some even testified that he could have been seen from the knees up. The physical facts absolutely contradict the testimony of these witnesses. We are quite satisfied, indeed, that when the building was only a few stories high a man in the engine room could have had full view of the plaintiff while upon the roof, but the evidence falls far short of proving this fact after the cornice had been constructed and the building practically completed. At any rate, the evidence is not so conclusive that the court was justified in taking the case from the jury.

It has been argued, however, that no foundation is laid in the pleadings for the introduction of evidence as to a defect in the plan of operation, or the system of signals, and that a recovery cannot be based thereon. The contention, in short, is made that the allegation of negligence in this respect is not alleged to have been the proximate cause of the accident, and that a recovery, therefore, cannot be had thereunder. We do not so construe the complaint. It is not, it is true, drawn with that degree of care which we would like. No demurrer, however, was interposed to it, and no objection to the introduction of evidence thereunder was made, nor was there any motion to make more definite and certain. It certainly charges that the defendant lowered the elevator suddenly and without warning; and the evidence of the plaintiff, if believed by the jury, could be properly construed both as proving that negligence, and that the sudden lowering was the result of the defective system of signals. The complaint was vulnerable to

a motion to make more definite and certain, and, at the common law, would have been vulnerable to a special demurrer. We cannot say, however, that, not having been objected to, it was incapable of supporting a verdict under the evidence submitted.

The case, in our opinion, is one which should have been submitted to the jury. The judgment of the District Court is reversed, and a new trial ordered.