HENRY E. SPICER *vs.* SOUTH BOSTON IRON COMPANY.

Suffolk. Nov. 17, 1884. — Jan. 10, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

In an action for personal injuries occasioned to the plaintiff, while employed in the defendant's iron foundry, by the fall upon him of a weight, caused by the breaking of an iron hook upon which the weight was hung, the evidence tended to show that there were two weights so hung, one at each side, near the top, of the frame of an oven in which the moulds were baked, and attached to each weight was a chain running to the ground; that there was a door in front of the oven, which, at the upper corners, was connected, by a chain running over a pulley, with the hook on each side, the ends of which were not welded together, but were left open; that, when it was necessary to open the oven, men were required to pull down upon the chain and weight on each side, and thus raise the door, which sometimes stuck in the grooves from its expansion by heat, and was then pried up with an iron bar; that the oven, door, and weights were made and hung as was customary in such foundries; that the plaintiff, at the time of the accident, was directed by the foreman to assist in raising the oven door in the usual way; that he could have stood a little out from under the weight, although he could not then have pulled so well; that the door stuck, and the men tried to raise it without waiting for the return of the foreman, who had gone for a bar to pry it up; that at the trial "the hook looked

as though there was a break previously to the main break;" that there was a visible flaw or crack in the hook above the flaw at the place of the rupture; that iron would usually break in the weakest spot; and that if a man made a careful examination of the hook, after making it, he might possibly, or if a man familiar with hooks examined it, he might perhaps, have discovered the flaw which caused the accident, but these flaws would not be visible on an ordinary inspection. *Held,* that the jury would be warranted in finding due care on the part of the plaintiff, and negligence on the part of the defendant.

TORT for personal injuries sustained by the plaintiff, while in the employ of the defendant, by the falling of a heavy weight upon his head, which was occasioned by the breaking of an iron hook upon which the weight was hung. Trial in the Superior Court, before *Barker,* J., who allowed a bill of exceptions, in substance as follows :

The defendant, at the time of the accident, was a corporation carrying on in South Boston a large and extensive iron foundry, and the plaintiff had been employed as a laborer therein for a period of about one year and ten months.

Among other machinery and appliances used by the defendant in said business were large ovens for baking the moulds. The doors of said ovens were so arranged as to slide up and down, and to the upper corners of said doors chains were attached, which passed up to the top of the frame and then over a pulley on each side, and on the front side of the frame near the top there was attached to each chain a weight, weighing about one hundred and fifty pounds, and to each weight a chain was attached running to the ground.

These weights were intended to be a counter balance to the door, and, when it became necessary to open the ovens for the purpose of examining the state of the moulds, or to remove them, laborers were called upon, two upon each side, to pull down upon said chains and weights, and thus raise the door, which sometimes stuck in the grooves from its expansion by heat, and sometimes an iron bar was used upon the front of the door to pry the same up and to start it. The weight was attached to each chain by an S hook, made of five-eighths inch iron, but the ends were not welded together, but left open. The iron weights were not encased; but several witnesses testified that these ovens and the doors and weights were made and hung as was usual and customary in foundries.

The plaintiff testified that he was a master mariner; that he commenced working as a laborer for the defendant on August 12, 1880, and received his directions from the foreman; that he was injured on June 10, 1882, about five o'clock in the afternoon; that the foreman told him to give the others a hand on the oven door; that he took hold of the chain; that he felt something give way, and something fell on his head; that his attention had never been called to the weights; that he knew there were chains; that he was called to assist, and did so; that he pulled on the left-hand side with only one man on the same side with him, but one McAllister was lifting up on the door with a crowbar; that he had never been called to help lift at that particular door before; that the door had only just started from the floor when the accident happened; that he was called off once or twice a week to assist in raising the doors; and that there was nothing which would prevent his standing a little out from under the weights, except that he could not pull so well, and there was some iron piled up at the side of the casing under the weights.

James McAllister, called by the plaintiff, testified that he was an iron-moulder; that he was in the employ of the defendant at the time of the accident; that he called the men to raise the door of the oven, and, while he had stepped away to get a bar, the weight fell; that the door sometimes would stick, and it stuck that day; that he had worked in other foundries, and the oven and the appliances for raising the doors were about the same in them all; that he never saw the weights put in casings; that there might have been some bars of iron piled up there, but a man could have stood upon them, or at one side, out from under the weights; and that he had gone to get a bar, and, while he was gone, they pulled on the chain and the weight fell.

William Morrison, called by the plaintiff, testified that he was a helper in the employ of the defendant at the time of the accident; that he did not know that it was the duty of any particular person to make inspection of this apparatus, and he had never known of any one making an inspection of this door and chain; that there might have been some bars of iron piled up there, but there were places for a man to stand out from under the weights if he anticipated danger; that he would have no difficulty in so

doing, but that he could not pull as well; that he could not say how it was then; that the weights were about three hundred pounds; and that the hook now looked as though there was a break previously to the main break.

Each of these two witnesses recognized the hook, and said that it appeared to be in the same condition now as at the time of the accident, except that there was an additional break where no flaw in the iron was visible, which, it was agreed, had been made since the accident by an experimental test applied to that part of the hook.

James W. Harvey, called by the plaintiff, testified that he was a blacksmith in Boston; that he had seen and examined the hook in question, and had discovered a crack or flaw about half an inch above the flaw at the place of the rupture which caused the accident; that a blow of a hammer or other similar force would, in his judgment, produce there a similar fracture; that iron would usually break in the weakest spot; that if this hook had been welded at the end, it would have held about seven tons, and, in the shape as it was before the fracture, it would hold about one ton, if sound, but, if closed without welding, it would hold more; that he had seen ovens in foundries; that he never saw the weights cased but once; that if a man made a careful examination of the hook, after making it, he might possibly, or if a man familiar with hooks examined it, he might perhaps, have discovered the flaw which caused the accident, but these flaws would not be visible on an ordinary inspection; and that it was good iron, but the trouble was occasioned by the flaw, which sometimes occurs in good iron.

The defendant called as a witness Francis Alger, who testified that he had been engaged in testing iron for the last twenty years; that he had seen these oven doors in other foundries, but had never observed any other or different appliances for raising them; that he had tested similar hooks made out of common iron, and they had stood from 3000 to about 5000 pounds, but this hook was made of good common iron; that he now saw the flaw, spoken of by the witness Harvey, in the hook, but he had not seen it before, although he had since the accident examined the hook; that he did not think that flaw could have been seen before the rupture which occasioned the accident, which he

thought would have tended to open the second flaw; that he did not think that the large flaw, which ruptured at the time of the accident, would have been visible before the accident; and that he was a shareholder in the defendant company.

The defendant asked the judge to rule that the action could not be maintained; but the judge declined so to rule.

The jury returned a verdict for the plaintiff in the sum of $1000; and the defendant alleged exceptions.

*A. Russ & D. A. Dorr*, for the defendant.

*S. H. Tyng & A. F. Converse*, for the plaintiff.

DEVENS, J. There was evidence that would authorize a finding by the jury that the plaintiff was performing his duty to aid in raising the oven door in the usual and customary way, and in the manner which would enable him to do it most efficiently. Even if he could have stood a little out from under the weights, by the fall of one of which he was injured, he could not then have pulled so well, and he had a right to believe that they were so secured that no danger was incurred by him therefrom. Nor is the fact that the laborers, of whom the plaintiff was one, endeavored to raise the door without waiting for the foreman, who had gone for a bar to pry it up, to be treated as showing a want of due care on his part.

There remains the question whether there was any evidence of negligence on the part of the defendant. That the S hook, by the rupture of which the injury occurred, was defective, was clearly proved. The master does not warrant to the workman the safety of the appliances, but he is obliged to use all reasonable care consistent with the nature and extent of his business that such appliances are proper and suitable. He is not responsible for hidden defects that could not have been discovered on the most careful inspection. *Ladd* v. *New Bedford Railroad*, 119 Mass. 412. *Holden* v. *Fitchburg Railroad*, 129 Mass. 268, 277. The testimony of Morrison, that the hook now looked as if there was a break previously to the main break, — of Harvey, that "if a man made a careful examination of the hook, after making it, he might possibly, or if a man familiar with hooks examined it, he might perhaps, have discovered the flaw which caused the accident, but these flaws would not be visible on an ordinary inspection," — the fact that there was actually a visible crack or

flaw in the hook above the flaw at the place of rupture, and that, as testified, iron will usually break in the weakest spot, — taken together, tended to show that a careful inspection would have revealed the weakness of the hook.

*Exceptions overruled.*