Hillsborough, }
July 2, 1906. }

### ST. PIERRE v. FOSTER & a.

The failure of a master to inspect an appliance furnished for his servant's use does not constitute actionable negligence, if the particular defect which caused the servant's injury was not reasonably to be anticipated and was not known by the master in season to prevent an accident.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1906, of the superior court by *Peaslee*, J., upon the defendants' exceptions to the denial of motions for a nonsuit and the direction of a verdict in their favor.

The plaintiff was employed in the defendants' tannery, in one room of which a new blower had been installed a few days before his injury. The plaintiff was required to oil this machine when it was in motion. The blower belt ran at a speed of about thirty feet a second. In order to oil one of the bearings when the machine was running, it was necessary for the plaintiff to insert his hand through the belt, remove the cap of the oil-cup, and fill the cup from an oil-can. On the morning of the accident the plaintiff proceeded to oil the blower while it was running. Having first removed the cap, he took the oil-can in his left hand and reached through the belt. As to what subsequently occurred the

plaintiff testified as follows: "Before I put a drop of oil in the oil-cup, I heard something kind of slap me and caught me and take my oil-can away and threw my hand right in somewhere, I do n't know where, so it got broke and pulled my thumb right off. Felt like a whip." The plaintiff stood by the blower a few moments, looked at the machine to discover the cause of his injury, and saw "something like a piece of lacing, four or five inches long, . . . slapping." He also testified that he did not notice any trouble with the belt until he felt the lacing strike his hand.

*Branch & Branch* and *Hamblett & Spring*, for the plaintiff.

*Burnham, Brown, Jones & Warren*, for the defendants.

YOUNG, J. The plaintiff bases his right to recover on the proposition that it can be found the defendants' failure to do what the ordinary man would have done in relation to inspecting the belt was the legal cause of his injury. If it can be found that they were negligent in that respect,—a question as to which no opinion is expressed,—it cannot be found that their failure to inspect the belt was the legal cause of the plaintiff's injury unless there is some evidence which tends to prove that if they had used ordinary care for the plaintiff's safety they would have known either that the belt lace was likely to pull out in the way it did, or that it had in fact done so, in time to prevent the accident. Is there any evidence which tends to establish either proposition?

It cannot be said the defendants were in fault for not anticipating that the lace might pull out in the way it did, if they used such a lace as the ordinary man would use in lacing such a belt and did the lacing in a skillful manner, unless it can either be said as a matter of law or found as a fact that the defendants either knew or ought to have known that even under such circumstances belt laces are liable to pull out in the way this one did, and that the plaintiff did not know it and was not in fault for not knowing it. That belt lacings are liable to pull out under these circumstances is not a matter of common knowledge, and there is no evidence which tends to prove that such is the fact; consequently, it cannot be found the defendants were in fault for not anticipating that this lace might pull out in the way it did unless there is evidence tending to prove either that such a lace should not have been used in lacing such a belt, or that the lacing was unskillfully done. An examination of the belt made shortly after the accident furnishes all the evidence there is on these issues. This examination showed that about five inches of one end of one of the laces used in the belt was loose, but that otherwise the belt was all

right. It cannot be found from such evidence either that the lace was unsuitable for the purpose for which it was used, or that the lacing was unskillfully done; in other words, it cannot be found from the mere fact that one end of the lace pulled out that the defendants ought to have anticipated that it would do so. Consequently, it cannot be found that the defendants were in fault for not anticipating that it would.

Since this is so, it will be necessary to consider whether there is any evidence from which it can be found that the defendants ought to have known that the lace had pulled out in time to prevent the accident. That five inches of one end of the lace was loose, and that it caught the plaintiff's hand and drew it into the machine, has no tendency to prove that the end of the lace had been loose an appreciable length of time; and the other evidence on this issue all tends to show that the lace pulled out at or about the time the plaintiff felt it strike his hand. When he was taking the cap off the oil-cup he stood so close to the belt that it is probable he would have both seen the end of the lace and heard it slap as it passed over the pulley if it had been loose at that time; for notwithstanding it required but a few seconds to remove the cap, the belt was running so fast that the lace passed around the pulley about twice a second, and there is nothing to show why the unusual noise caused by the slapping of the loose end of the lace would not have been as likely to attract his attention at that time, as after he was hurt. He does not claim either that his attention was distracted or that he was not on the lookout for the dangers he knew were incident to oiling the blower when it was running. One of these must have been trouble with the belt, for the danger incident to putting his hand in the narrow space between the rapidly revolving fans and the swiftly running belt when there was trouble with either was perfectly obvious. So the only reasonable inference that can be drawn from the fact that he neither saw the loose end of the lace before he was hurt nor heard the slapping as it passed over the pulley is that the lace pulled out of the belt after he removed the cap from the oil-cup, or, in other words, at or about the time he felt it strike his hand.

In short, the facts disclosed by the examination of the belt have no tendency to prove that an unsuitable lace was used, or that the lacing was unskillfully done, or that the end of the lace was loose so long prior to the accident that the defendants would have discovered it if they had used ordinary care for the plaintiff's safety. Consequently, the cases on which the plaintiff relies (*Spicer* v. *Company*, 138 Mass. 426; *Bushby* v. *Railroad*, 107 N. Y. 374; *Flanigan* v. *Company*, 63 N. J. Law 647; *Toledo etc. Ry.* v. *Conroy*, 68 Ill. 560; *Munch* v. *Railway*, 75 Minn. 61; *Union Pacific Ry.* v.

*Daniels*, 152 U. S. 684) are not in point; for in all of them the evidence derived from an examination of the appliance which caused the servant's injury tended to prove that it was constructed from unsuitable material, or that the work of constructing it was unskillfully done, or that the defect which caused the servant's injury originated so long before the accident that the master would have known of it in time to prevent the accident if he had used ordinary care for his servant's safety.

Since there is no evidence from which it can be found either that the defendants ought to have anticipated that this lace would pull out as it did, or that they could have done anything after it did pull out to prevent the accident, it cannot be found that their failure to inspect the belt was the legal cause of the plaintiff's injury, even if it can be found they failed to do what the ordinary man would have done in relation to inspecting it.

*Exceptions sustained: verdict set aside: verdict and judgment for the defendants.*

All concurred.