Coös,  
Oct. 6, 1908.

## PARMALEAU v. INTERNATIONAL PAPER CO.

Where the character of the work is not complicated and attended with obvious and inherent dangers, or when the general method of doing it, long established and recognized by the employees, is not unreasonable or unnecessarily dangerous, the employer is under no obligation to provide rules, or to command specifically the observance of a system of work which his servants adopt and observe without special instructions.

CASE, for negligence. Transferred from the September term, 1907, of the superior court by *Pike*, J., on the plaintiff's exception to an order of nonsuit.

The plaintiff's evidence tended to support the following facts: The plaintiff was employed by the defendants, and his work required him to unload pulp-wood from cars which had been switched onto a track running into one of the mills. He had been employed in this way for about three months, the business requiring the unloading of some fifteen cars each day. The loaded cars were left on the track some distance above the mill, and it was the business of the workmen to take them down the track to the mill. The track had a grade, and the cars when left by the engine were usually held in position by a trig placed under the wheels and by having the brake set. When a car was to be moved down, one man would go to the brake upon the car and when he was ready notify a man on the ground to kick out the trig. If the brake was in working order, the brakeman could control the movement of the car and stop it at a place called the carrier, where it would be partly unloaded, and then taken farther down to a place called the tank, where the unloading would be completed. There were two gangs, consisting of three or four men each. One gang took the cars standing on the track down to the carrier and unloaded a part of the wood, and the other gang, when they had unloaded a car at the tank and sent it away, came up the track to the carrier to take the car standing there down to the tank. This was a signal to the carrier men to start up the track to bring down another car. A few times during the plaintiff's employment he had seen cars come down which could not be stopped at the carrier. He also knew that the brakes would not always work satisfactorily, and that if they did not, a loaded car was liable to run by the carrier and strike the car at the tank with more or less force.

On the morning of the accident the plaintiff was employed at the tank. After the men had unloaded the car, the plaintiff went

up to the carrier to take the car standing there down to the tank, and the men at the carrier thereupon went up the track to bring down a fully loaded car. The plaintiff saw them go away and knew what they were going for. He saw two of them sanding the track, and two others, Ellis and Clouthier, going ahead toward the car. In the meantime he got upon the car at the carrier and by working the brake was taking it down to the tank, when the other car came down with no one in control of it and collided with the car he was upon. The impact threw him off and he was injured thereby. After the accident an examination showed that the " catch " on the brake would not hold. There was no other evidence of its condition before the accident.

When Ellis and Clouthier reached the fully loaded car, an engine, which was sometimes used in taking cars down, was standing on another track. Ellis, who was not within sight of Clouthier, motioned and shouted to the switchman on the engine to attract his attention, and thereupon Clouthier kicked out the trig and the car started, with no one at the brake. Clouthier did not testify. The defendant had established no special rules for doing this work.

*Sullivan & Daley* and *Herbert I. Goss*, for the plaintiff.

*Rich & Marble* and *Drew, Jordan, Shurtleff & Morris*, for the defendants.

WALKER, J. There is nothing in the evidence warranting the inference that the brake was improperly constructed, or that its defective condition had existed for such a length of time that the defendant is chargeable with knowledge that it was out of repair and would not work. If it was the defendant's duty to furnish reasonably safe appliances for controling the movement of the cars, and to repair defects in the brakes discoverable upon reasonable inspection, the evidence is not sufficient to authorize a finding that it did not perform its duty in these respects. *St. Pierre* v. *Foster*, 74 N. H. 4; *Klineintie* v. *Company*, 74 N. H. 276; *Smith* v. *Railroad*, 73 N. H. 325. In fact, it appears that the defendant's system of dealing with loaded cars received from the railroad company was such that this defect would have been discovered and the danger averted, but for the intervening negligence of the fellow-servant, who removed the trig before the brakeman could mount the car and attempt to control its movement by operating the brake. The case is not one of the concurring negligence of the master and a fellow-servant, but one where the usual course of the master's business was interrupted by the carelessness of the fellow-servant.

But the plaintiff takes the position that if the defendant was not negligent in a legal sense in providing a defective brake, it was negligent in not prescribing definite rules for the conduct of its business, and that its omission in this respect was the proximate cause of the accident.   An employer's duty to promulgate rules for the guidance and protection of his servants in respect to the details of the work in hand does not arise in all cases; and it is unnecessary in this case to enter upon a discussion of the question when they are and when they are not required.   It is sufficient to hold that when the character of the work is not complicated and intricate and attended with obvious and inherent dangers, or when the general method of doing it, long established and recognized by the employees, does not appear to be unreasonable or unnecessarily dangerous, the employer is under no obligation to provide rules, or to command specifically the observance of a system of work which his men adopt and observe without special instructions.   A reasonably safe method of operation, customarily followed, is in effect equivalent to the establishment of reasonable rules, so far as the employer's duty in this respect is concerned.

In this case, the method of operation, which it is conceded was ordinarily adopted, does not appear to be unreasonable.   Nor would the evidence authorize a finding that it was unreasonable, considering the work to be accomplished.   The custom was, when a car was to be moved down the track, for one man to go to the brake on the top of the car, and when he was ready to notify the man on the ground to knock out the trig.   The man at the brake would thus be in control of the car in its course down the track. It was not their custom or the rule adopted by them to start a car in the absence of a brakeman.   If it had been, the system would doubtless be deemed defective and dangerous.   There was therefore no necessity for a formal rule that a car should not be started until the man at the brake signified that he was in position to control the car.   The fact that no such man was at the brake on the car in question was not due to the want of a reasonable rule or system, but to the omission of Clouthier, who removed the trig without knowing whether the brakeman was at his post and without receiving a signal from him that he was ready.   A formal rule or regulation issued by the defendant would not have prevented this oversight on the part of Clouthier, any more than the actual system of operation with which he was fully acquainted.

It is said that the defendant should have provided for the giving of some definite signal when a car was about to be liberated. The object of a signal would be, of course, to convey information to the men so that they could protect themselves from being injured by the moving car.   But it appears that all the men,

including the plaintiff, knew when a car near the switch would start. When the plaintiff, on the morning of the accident, went up to the carrier, he saw the carrier crew start toward the car above, and knew that as soon as they got there they would proceed to put that car in motion down the track directly behind the car he was upon. He would have had no more information if they had actually told him that they were going to start the car. And he also knew that a loaded car, not under proper control of the man at the brake, would come down the track of its own momentum and attain considerable force when it reached a point in the vicinity of the tank. It does not appear how special instructions or rules would have aided him in protecting himself from the known and obvious dangers of his employment. *Collins* v. *Car Co.*, 68 N. H. 196.

Finally, it is urged that there should have been a rule requiring the giving of a different signal to attract the attention of the engineman from that given to kick out the trig, because it may be that Clouthier, who did not testify, may have mistaken Ellis' signal to the fireman as the brakeman's signal to him to start the car. But the manner of doing this work required Clouthier to take his signal from the man on the top of the car. He knew, or might easily have learned, that no one was in that position, and consequently that no signal to him would be given. It was plainly his duty, before obeying a signal, to ascertain whether it proceeded from one in a position to give it. He knew that a signal when no one was on the top of the car was not intended as an order to him to kick out the trig. We therefore reach the same conclusion as before: that a rule requiring different kinds of signals to him and to the engineman would not have prevented him from starting the car when no one was at the brake. The essential rule was not to start the car until the brakeman was in a position to control it; and this was the rule in accordance with which the men operated.

As the plaintiff's evidence is not sufficient to prove actionable negligence on the part of the defendant, the nonsuit was properly ordered.

*Exception overruled: judgment for the defendant.*

All concurred.